STATE of Missouri, ex rel. Michelle COMMON, as Personal Representative of the Estate of Betty Ketterlin, and as Statutory Trustee for Silverthorne Development Co., Relators,

v.

The Honorable C. David DARNOLD, Judge of the Circuit Court of Camden County, Missouri, Respondent.

No. 25690.

Missouri Court of Appeals, Southern District, Division One.

Nov. 21, 2003.

Michael P. Healy, Healy Law Office, Kansas City, for relators.

Thomas A. Vetter, Matthew A. Clement, Cook, Vetter, Doerhoff & Landwehr, P.C., Jefferson City, Harold F. Glass, Millington, Glass & Love, Springfield, for respondent.

## PHILLIP R. GARRISON, Judge.

This case arises from a petition for writ of prohibition filed by Michelle Common ("Common") as personal representative of the estate of her mother, Betty Ketterlin, and as statutory trustee for Silverthorne Development Company (collectively, "Plaintiffs"). The preliminary order that we issued in response to that petition is now made absolute.

The underlying suit, filed by the late Betty Ketterlin, and others,[1] against Central Bank of Lake of the Ozarks ("Central Bank"), John E. Curran ("Curran"), (collectively, "Defendants") and others claimed damages allegedly arising from a failed condominium project at Lake of the Ozarks. Robert Ketterlin ("Ketterlin"), the son of Betty Ketterlin and the brother of Common, was identified by Plaintiffs, in answers to interrogatories served in November 2002, as a non-retained expert witness expected to be called at trial to testify about "construction, [and] real estate values." The parties agree that Ketterlin's domicile is in the State of Washington, that he is not a party to the underlying suit, has not consented to or submitted to the jurisdiction of any Missouri court, and transacts no business in this state. The parties also agree that Ketterlin operated a construction company in the Lake of the Ozarks area in the 1980's, and was, for a brief time, involved in the early stages of the condominium project that is the subject of the underlying suit. He also is an heir of Betty Ketterlin and may receive a distribution if there is personal property in her estate.

On April 8, 2003, Curran's attorney served a notice to take depositions stating that the depositions of two experts identified by Plaintiffs (James C. Wirkin and James P. Ketter) would be taken in Kansas City, Missouri on May 14 and 15, 2003, and that the depositions of Common and Ketterlin would be taken in Kansas City on May 16, 2003. On April 28, 2003, Curran's attorney wrote to Plaintiffs' attorney asking him to "confirm the deposition arrangements for May 14, 15, and 16 as to times and locations." On May 12, 2003, Curran's attorney wrote what he called a "Golden Rule" letter to Plaintiffs' counsel stating that on April 4, 2003 they had agreed on deposition dates for the retained and non-retained experts, that the notice to take depositions had been served on April 8, 2003 specifying the agreed upon dates, that on April 28, 2003 he had written Plaintiffs' counsel asking for confirmation of the times and locations for the depositions and that they "assumed that [Common] and [Ketterlin] were coming from out[-]of[-]state," that they had contacted one of the experts to be deposed (James Ketter) and learned that he knew nothing about the depositions, that they were cancelling the deposition of James Wirken set for May 14, and that they were requesting cooperation in scheduling the depositions. On that day, Plaintiffs' counsel faxed a letter to the attorneys for Defendants stating that James Wirken's deposition would be taken on May 14, 2003 as scheduled, that he had not gotten "things organized with [James] Ketter promptly enough to produce him on the 15th of May," and that his deposition

---

1. While the record appears to indicate there were multiple plaintiffs and defendants in the original suit, we have not been provided a copy of the petition to confirm all of their identities.

would need to be rescheduled. The letter also stated that

> [w]ith regard to [Common] and [Ketterlin], you may have overlooked the fact that these are *non-retained* experts. Accordingly, to the extent that you wish to depose them, they will need to be deposed in Telluride and Seattle, respectively. Alternatively, if you agree to pay for their expenses to travel to Kansas City, including some allowance for travel time, I would be willing to encourage them to make the trip.

Two days later, on May 14, 2003, Curran's attorney filed a motion for sanctions alleging Plaintiffs had frustrated Defendants' efforts to take the depositions of Plaintiffs' expert witnesses during the week of May 12, 2003 by agreeing to deposition dates, then making no contact with the experts to commit the experts to the agreed upon dates, ignoring deposition notices, refusing to communicate with Defendants' counsel as to the status of the scheduled depositions, and asking the court to "order that [Plaintiffs'] non-retained experts, who are members of the Ketterlin family and beneficiaries of any recovery made by [P]laintiffs, be deposed in Camdenton [, Missouri] at the expense of [P]laintiffs." In response, Plaintiffs alleged that Curran had "noticed up" the depositions of the two non-retained experts, both of whom lived outside Missouri, without making contact with the witnesses, or requesting that Plaintiffs' counsel do so, to schedule the depositions in Colorado and Washington.

Plaintiffs also filed a motion for a protective order on June 13, 2003 in which they argued that Ketterlin, being a resident of Washington, could not be compelled to appear for his deposition in Missouri. They also contended that the attendance of a non-party witness could be compelled at a deposition only by a subpoena, but that a Missouri court's subpoena power is limited by its geographical boundaries.

The trial court entered an order on June 20, 2003 after holding "telephone conferences" with the parties on June 10 and 17, which stated as follows:

> The Court finds that the facts stated by [Curran] in his May 2003 motion for sanctions are true and that sanctions are appropriate. Accordingly, the Court orders that:

> (1) Plaintiffs' non-retained expert … [Ketterlin] shall be deposed in Kansas City on June 24, 2003, at 10:00 a.m. Both of the depositions shall be taken in the office of [Plaintiffs' counsel].[2]

Three days later, Plaintiffs filed the petition for writ of prohibition that is the subject of this proceeding and led to the issuance of our preliminary order in prohibition.

■ A trial court is allowed broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that the appellate courts will interfere. *State ex rel. Dixon v. Darnold,* 939 S.W.2d 66, 68 (Mo.App. S.D.1997). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* A trial court's discretion with regard to discovery sanctions is not, however, unfettered, and each case must be decided on its own peculiar facts. *Fidelity Nat. Ins. Co. v. Snow,* 26 S.W.3d 473, 475 (Mo.App. S.D.2000).

**2.** The order also required that the deposition of Common be taken in Kansas City on June

23. There is no issue on this appeal concerning that portion of the order.

■ A writ of prohibition will lie where necessary to prevent a usurpation of judicial power, to remedy an excess of jurisdiction, or to prevent absolutely irreparable harm to a party. *State ex rel. Wilson v. Davis,* 979 S.W.2d 253, 255 (Mo. App. S.D.1998). "Prohibition is the proper remedy when a trial court has abused its discretion in a discovery order to the extent that its act exceeds its jurisdiction." *Id.* (citing *State ex rel. Lichtor v. Clark,* 845 S.W.2d 55, 59 (Mo.App. W.D.1992)).

In the instant case, it is first important to identify significant features of the underlying facts and the trial court's order: (1) the notice to take depositions was not sufficient in and of itself to require the attendance of Ketterlin as a non-party at a deposition, according to Rule 57.03(a)[3]; (2) there is no indication that any party contends that Plaintiffs agreed to produce Ketterlin in Kansas City for his deposition in May 2003 or at any other time; (3) Curran's counsel said they "assumed" that Ketterlin would be coming from out-of-state for his deposition; (4) Defendants did not make any effort to take the deposition of Ketterlin in Washington, the state of his residence, or to require his attendance at a deposition in that state; and (5) there is no contention that Plaintiffs have the ability to require the attendance of Ketterlin at a deposition in Missouri.

Curran's motion, which resulted in the order that is the subject of our preliminary order, was entitled "Motion For Sanctions," but stated that it was made pursuant to Rules 56.01(c) and 61.01. Rule 56.01(c) authorizes the trial court to make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including eight types of orders specifically enumerated in that rule. Rule 61.01 relates to sanctions for failure to comply with the discovery rules embodied in Rules 56.01 through 60.01. It is apparent from the trial court's order, which found that the facts stated in Curran's motion for sanctions were true and that "sanctions [were] appropriate," that it was granting relief pursuant to Rule 61.01.[4]

■ Rule 61.01 does not, however, by its terms, authorize sanctions against a party for failing, in response to a notice to take depositions, to produce a non-resident, non-retained expert for his deposition in this state.[5] Additionally, Rule 56.01(b)(5) provides that discovery of facts known and opinions held by a non-retained expert "shall be discoverable in the same manner as for lay witnesses." Pursuant to Rule 57.03(a), the attendance of a party for a deposition is compelled by a notice meeting the requirements of Rule 57.03(b), but the attendance of other witnesses is compelled by subpoena as provided in Rule 57.09. It is clear, therefore, that the notice to take depositions served by Curran was not sufficient to compel the attendance of Ketterlin at a deposition in Kansas City. Moreover, sanctions for discovery violations should not be imposed unless the party seeking sanctions has been prejudiced by the violations. *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 651 (Mo. banc 1997). Curran could hardly have been

---

**3.** All references to rules are to Missouri Rules of Civil Procedure (2003) unless otherwise indicated.

**4.** There is no contention that Rule 57.03(h) is implicated here. That rule authorizes the awarding of reasonable expenses incurred in attending a "noticed up" deposition where the party giving the notice fails to attend or

has not complied with the rules to compel the attendance of the witness.

**5.** We reiterate that there is no contention here that Plaintiffs agreed to produce Ketterlin for a deposition in Missouri, and we express no opinion about the outcome if such an agreement had been demonstrated.

prejudiced by Plaintiffs failure to produce Ketterlin in Kansas City when Curran "assumed" he would appear in Missouri for that purpose, but took no action sufficient to compel his attendance, assuming Ketterlin would be available for service of a subpoena in this state.

Additionally, the trial court ordered that Ketterlin's deposition be taken in Kansas City. As indicated above, the order was structured as a sanction against Plaintiffs in response to Curran's motion alleging that Plaintiffs had agreed to deposition dates but then made no contact with the experts to commit the experts to those dates, had ignored deposition notices, and had refused to communicate with Defendants' counsel about the status of scheduled depositions. It is apparent from the order that the trial court's intention was to require Plaintiffs to produce Ketterlin in Kansas City for his deposition. While there is no mention of who would be responsible for the expense of doing so, we presume that the court intended that Plaintiffs bear that expense. There is nothing in the record to indicate that Plaintiffs have the ability to require Ketterlin to appear in Kansas City for his deposition. Even though Common is Ketterlin's sister, she has no legal way of compelling him to appear in this state. *See State v. Glaese,* 956 S.W.2d 926, 932, n. 10 (Mo.App. S.D.1997) (as a general rule, a Missouri court's subpoena authority does not reach beyond the geographical boundaries of the state). The trial court has, in the guise of a sanction, effectively ordered Plaintiffs to produce Ketterlin in Missouri, although they have no legal means to require that attendance in order to comply with the order. We hold that it is beyond the jurisdiction of the trial court to have imposed this requirement under these circumstances.

The preliminary order in prohibition is hereby made absolute.

BARNEY, P.J., and PREWITT, J., concur.