Dennis BUEMI, et al., Respondents,

v.

Arthur KERCKHOFF, Jr.,
et al., Appellants.

No. SC 91132.

Supreme Court of Missouri,
En Banc.

Aug. 2, 2011.

Rehearing Denied Oct. 4, 2011.

John A. Kilo, H. Clay Billingsley, Kilo, Flynn, Billingsley, Trame & Brown PC, St. Louis, for Kerckhoffs.

Jason M. Rugo, Roger W. Pecha, Sarah J. Swoboda, Jenkins & Kling PC, St. Louis, for Buemis and most of the homeowners.

Canice Timothy Rice Jr., St. Louis, for another homeowner.

Joseph V. Keady Jr., Stinson, Morrison, Hecker LLP, St. Louis, for Fischer & Frichtel.

Jackson D. Glisson III, Daniel P. Schoenekase, Greensfelder Hemker & Gale PC, St. Louis, for PF Development.

PATRICIA BRECKENRIDGE, Judge.

Arthur Kerckhoff Jr., Arthur Kerckhoff III, Arthur Kerckhoff IV, and the Arthur Kerckhoff Trust (Kerckhoff defendants) appeal the trial court's order imposing sanctions on them for acting in bad faith in a mediated settlement meeting. Because an order imposing monetary sanctions does not dispose of a "claim for relief" as required by Rule 74.01(b) and does not satisfy the requirement in section 512.020(5)[1] that allows appeals only of final judgments, the trial court certification of its order for immediate appeal is without effect. Accordingly, the appeal is dismissed.

## Factual and Procedural Background

The underlying dispute involves a contract and tort action brought by Dennis Buemi and other homeowners in the Pevely Farms subdivision (homeowners) against certain homebuilders, including the Kerckhoff defendants. PF Development, LLC and Fischer & Frichtel Inc. also were joined as defendants. In their action, the homeowners alleged that the subdivision water system did not provide an adequate water supply for the entire development, despite a representation that there was an adequate supply.

In July 2008, the trial court ordered that the case be referred to mediation. Thereafter, a representative group of the homeowners, as well as two of the three individual Kerckhoff defendants,[2] along with the

---

1. All statutory references are to RSMo Supp. 2010.

2. Arthur Kerckhoff IV did not attend.

other defendants, met to mediate the case. During the mediation, certain terms were reduced to writing in papers referred to as term sheets one and two. At the close of the mediation, all terms had not been agreed to by the parties present at the meeting. Upon the request of one of the parties, the mediator obtained a pre-printed form titled "mediated settlement agreement." In the space where conditions were to be set out, the mediator wrote, "Case settled in principle—proposed settlement to be reduced to writing by 12–31–08.... Plaintiffs to recommend settlement to property owners." The statement was signed by some, but not all, of the defendants.[3] After the statement was signed, an additional term sheet was prepared by some of the plaintiffs. Neither the new term sheet nor the two earlier term sheets were attached or incorporated into the form.

Ultimately, the parties were unable to agree to terms in a written settlement agreement. In response, the homeowners and PF Development filed motions to enforce settlement in the underlying action. The trial court scheduled an evidentiary hearing on the motions. During the hearing, the mediator testified that no settlement was reached by the parties. At the conclusion of the evidentiary hearing, the trial court indicated that it would entertain motions for sanctions regarding the costs incurred by the parties during the mediation and costs associated with responding to the Kerckhoff defendants' failure to settle the case. The homeowners, PF Development and Fischer & Frichtel subsequently filed motions for sanctions against the Kerckhoff defendants seeking awards of attorney's fees. The motions alleged

that the Kerckhoff defendants acted in bad faith by signing the mediation form and not advising the homeowners and other defendants that they did not consider themselves legally bound.[4]

Thereafter, the trial court entered an order denying the motions to enforce settlement agreement, but granted the motions for sanctions. The court found that the parties had reached a settlement in principle but that, due to the failure to attach the three term sheets to the settlement, the court was unable to enforce the agreement. The court further ruled that the Kerckhoff defendants had executed the mediated settlement agreement form with the intent that it was not binding on them; that they concealed that intent; and that they eventually submitted a settlement proposal that varied significantly from the terms agreed to at the mediation. On that basis, the trial court concluded that the Kerckhoff defendants acted in bad faith and ordered them to pay attorney fees totaling $122,425 to the various parties as a sanction for their conduct.

Thereafter, the Kerckhoff defendants filed a motion with the trial court requesting that its order be certified as final and appealable pursuant to Rule 74.01(b). In response to the motion, the trial court entered an order finding that its prior ruling imposing sanctions was final for purposes of appeal and that there was no just reason for delay. The Kerckhoff defendants appealed to the court of appeals, which dismissed the appeal for lack of a final judgment. This Court granted transfer. Mo. Const. art. V, sec. 10.

3. Arthur Kerckhoff IV did not sign the document.

4. The Kerckhoff defendants also filed their own separate motion for sanctions against the

other parties alleging that their motions to enforce settlement were frivolous. The Kerckhoff defendants' motion for sanctions was overruled.

### Trial Court Order Imposing Sanctions Not a Final Judgment

Although none of the parties here questions whether the trial court properly certified its order for immediate appeal pursuant to Rule 74.01(b), this Court is required to raise that issue *sua sponte*. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). " 'The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists.' " *State ex rel. Coca–Cola Co. v. Nixon*, 249 S.W.3d 855, 859 (Mo. banc 2008) (internal citations omitted). Other than statutorily recognized exceptions not applicable to the present case, section 512.020 requires that there be a "final judgment" as a prerequisite to appellate review. *State ex rel. Hilburn v. Staeden*, 62 S.W.3d 58, 60 (Mo. banc 2001). That section states, in relevant part:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any . . . (5) Final judgment in the case or from any special order after final judgment in the cause. . . .

Section 512.020.

Generally, a final judgment is defined as one that resolves " 'all issues in a case, leaving nothing for future determination.' " *Transit Cas. Co. ex rel. Pulitzer Publishing Co. v. Transit Cas. Co. ex rel. Intervening Employees*, 43 S.W.3d 293, 298 (Mo. banc 2001) (internal citation omitted). The converse of a final judgment is an interlocutory order, which is an order that is not final and decides some point or matter between the commencement and the end of a suit but does not resolve the entire controversy. *Id.* Here, the trial court's order imposing sanctions was inter-locutory in nature as it is undisputed that the order decides a matter between the commencement and the end of the suit and that the homeowners' underlying claims for damages and injunctive relief still are pending. Nevertheless, the Kerckhoff defendants assert that Rule 74.01(b) gives this Court jurisdiction over their appeal of the interlocutory order imposing sanctions.

Rule 74.01(b) promotes judicial economy by permitting interlocutory appeals in cases involving multiple claims or parties. The rule authorizes the trial court to enter an appealable final judgment as to fewer than all claims or parties in the case and to certify that there is no just reason to delay the appeal of that judgment. Rule 74.01(b) reads, in relevant part:

> When more than *one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim*, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. . . .

(Emphasis added).

This Court is constrained by the language of Rule 74.01(b) when construing it and may not find a meaning that is not supported by the language of the rule. This Court interprets its rules by applying the same principles used for interpreting statutes. *State ex rel. Vee–Jay Contracting Co. v. Neill*, 89 S.W.3d 470, 471–72 (Mo. banc 2002). Consequently, "[t]his Court's intent is determined by considering the plain and ordinary meaning of the words in the Rule." *Id.* at 472. To determine the plain and ordinary meaning of a term or phrase, this Court utilizes the definition found in the dictionary. *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 156 (Mo. banc 2010).

As relevant to this case, Rule 74.01(b) is applicable "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim." Black's Law Dictionary defines a "claim," also termed a "claim for relief," as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." BLACK'S LAW DICTIONARY 281–82 (Bryan A. Garner, 9th ed.2009). A "claim" is also defined as "[t]he aggregate of operative facts giving rise to a right enforceable by a court <the plaintiff's short, plain statement about the crash established the claim>." *Id.* The above definitions indicate that a "claim for relief" encompasses only those legal claims asserted in a party's pleadings. However, even if the above definitions can be read more broadly, the conclusion that the rule only applies to claims asserted in a party's pleadings is confirmed by the language in Rule 74.01(b) that modifies the phrase "claim for relief," which speaks of those claims being asserted "in an action" by "a claim, counterclaim, cross-claim, or third-party claim." The language in Rule 74.01(b) reflects the Court's recognition that, under section 512.020.5, only final judgments may be appealed. The effect of Rule 74.01(b) is to permit severance of any unrelated substantive claim for relief of the parties and to allow appeal of a final judgment on those severed claims.

Because a motion for sanctions is not a legal claim filed "in an action" by way of a petition, counterclaim, cross-claim, or third-party claim, it does not fall within the definition of a "claim for relief," as that term is used in Rule 74.01(b). Accordingly, a trial court's ruling imposing sanctions cannot be a "distinct judicial unit" subject to appeal under Rule 74.01(b).[5] This reading of Rule 74.01(b) is consistent with the seminal case of *Committee for Educational Equality v. State* and its progeny, which defined the scope of Rule 74.01(b). 878 S.W.2d 446 (Mo. banc 1994).

In *Committee for Educational Equality*, the Court held that for a trial court's order to be certifiable under Rule 74.01(b), "the minimum unit of disposition is at least one claim." *Id.* at 450. Additionally, the Court held that a judgment that resolves fewer than all legal issues as to any single "claim for relief" is not final,

---

5. The dissent justifies ruling contrary to the conclusion that an order imposing sanctions cannot be certified under Rule 74.01(b) by citing cases stating that a motion to enforce settlement adds to the underlying case a collateral action, which seeks specific performance of the settlement agreement. *E.g., Eaton v. Mallinckrodt, Inc.,* 224 S.W.3d 596, 599 (Mo. banc 2007). The dissent incorrectly frames the issue being appealed in this case as whether the trial court's ruling on the *motions to enforce settlement* is appealable. That is not the issue in this case. Instead, this Court is reviewing appealability of the trial court's judgment sustaining the parties' *motions to impose sanctions.* The dissenting opinion incorrectly suggests that the motions for sanctions were *filed with* the motions to enforce settlement. Contrary to the dissent's assertion, the motions to impose sanctions and the motions to enforce settlement were filed by the parties as separate documents and at different times. This misconception is the basis of the dissent's holding that the trial court's order is certifiable. By mischaracterizing the issue, the dissent is able to avoid the true issue involved in this appeal—whether the motions for *sanctions* (as opposed to the motions to enforce settlement) are capable of being appealed under Rule 74.01(b). The dissenting opinion cites no case law to support the position that a trial court's ruling on a motion to impose sanctions is a final appealable judgment. Additionally, even if the trial court's denial of the motions to enforce settlement was at issue, the dissent concedes that there is no case holding that an order *denying* a motion to enforce settlement is immediately appealable. Instead, it simply dismisses cases ruling to the contrary as illogical.

regardless of the trial court's designation. *Id.* In that case, the plaintiffs asserted multiple claims in their petition, requesting both declaratory and injunctive relief. *Id.* at 451. The trial court entered declaratory judgment as to the plaintiffs' claims but retained jurisdiction over the case to enforce the judgment through injunctive relief. *Id.* at 452. This Court held that because the trial court's judgment did not dispose of all remedies as to one single "claim for relief," the judgment was not final. *Id.*

In analyzing the concept of a "claim for relief," the Court's opinion sets out the following discussion of Federal Rule 54(b), from which this Court drew the language for Rule 74.01(b):

> When Rule 74.01(b) was adopted as a rule of this Court in 1988, it was copied almost verbatim from Federal Rule of Civil Procedure 54(b). The meaning of the phrase "one claim for relief" was developed in the federal cases prior to the adoption of our rule. While not binding authority, the federal cases are highly persuasive. Where a federal rule has been construed by the federal courts and our Court thereafter adopts a rule on the same subject using identical language, there is no principled way to ignore the federal cases.

> Under the federal cases construing F.R.C.P. 54(b), in determining whether an action presents more than one claim for relief, the focus is on the number of legal rights asserted in the action. If a complaint seeks to enforce only one legal right, it states a single claim, regardless of the fact that it seeks multiple remedies ... Worded somewhat differently, claims are considered separate if they require proof of different facts and the application of distinguishable law, subject to the limitation that severing the claims does not run afoul of the doctrine

forbidding the splitting of a cause of action. . . .

*Id.* at 451.

In *Gibson v. Brewer*, this Court further defined a single "claim for relief" as a "distinct judicial unit," adopting the phrase from prior court of appeals decisions. 952 S.W.2d 239, 244 (Mo. banc 1997) (internal citations omitted). The Court noted that for a ruling to dispose of a "distinct judicial unit," there had to be a "final judgment on a *claim*, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the *claim*." *Id.* (emphasis added). In *Gibson*, the issue was whether the trial court's dismissal of fewer than all counts in the plaintiffs' petition could be appealed immediately. *Id.* This Court held that the counts dismissed by the trial court arose from the same transactions and occurrences as the counts left pending in the trial court; therefore, the trial court did not resolve a "distinct judicial unit." *Id.*

Reading *Committee for Educational Equality* and *Gibson* together, it is clear that, when determining if a judgment disposes of a "distinct judicial unit," the focus is on whether the trial court's order disposes of a "claim." Both cases refer to the language in Rule 74.01(b) requiring that a "claim for relief" be disposed of before a case can be appealed. Additionally, both cases dealt with a factual scenario in which the trial court certified its order when it disposed of fewer than all of the claims asserted in the parties' *pleadings*. The context of the Court's use of the terms "claims" and "claims for relief" make clear that the Court's discussions reference substantive claims for relief in the parties' pleadings. The Court's discussion in both cases precludes a finding that an interlocu-

tory ruling imposing sanctions fits the definition a "claim for relief."[6]

Multiple decisions from the court of appeals properly have applied *Committee for Educational Equality* and *Gibson* to find that no appealable judgment exists when a trial court enters an order as to matters arising during litigation that does not resolve a claim for relief. *See, e.g., Peet v. Carter*, 278 S.W.3d 707, 710 (Mo.App.2009) (order denying a motion to reconsider not appealable); *Bibb v. Title Insurers Agency, Inc.*, 245 S.W.3d 919, 919 (Mo.App. 2008) (order denying motion for default judgment not appealable); *Ferguson v. Carson*, 235 S.W.3d 607, 608 (Mo.App. 2007) (order granting motion to transfer venue not appealable). Of particular note, in *Harting v. Stout*, the court of appeals, applying a predecessor to Rule 74.01(b),[7] held that a trial court's certification of an order imposing monetary sanctions for immediate appeal was invalid because that rule did not apply to sanction proceedings. 690 S.W.2d 458, 459 (Mo.App.1985).

The conclusion that Rule 74.01(b) does not allow for the immediate appeal of a trial court ruling imposing sanctions is further supported by federal court decisions interpreting the federal rule governing interlocutory appeals. As noted above, the language of Missouri's Rule 74.01(b) was derived from Federal Rule of Civil Procedure 54(b), which is worded almost identically.[8] While not binding, the Court should give significant consideration to federal court decisions construing a federal rule when this Court subsequently adopts a rule on the same subject and uses the same or virtually identical language. *Comm. for Educ. Equal.*, 878 S.W.2d at 451.

In *Mulay Plastics, Inc. v. Grand Trunk W. R.R. Co.*, the Seventh Circuit addressed the issue of whether a trial court's order imposing sanctions is subject to interlocutory appeal. 742 F.2d 369 (7th Cir. 1984). In that consolidated appeal, the parties were awarded attorney's fees as

---

**6.** In reaching the opposite conclusion, the dissent overlooks the plain language of Rule 74.01(b) and, instead, reads language out of context from this Court's opinion in *Gibson*. Specifically, the dissent points to an isolated sentence in *Gibson* stating, "[I]t is the content, substance, and effect of the order that determines finality and appealability." 952 S.W.2d at 244. However, reading *Gibson* as a whole undermines the dissent's interpretation of that sentence. As noted above, *Gibson* involved a trial court's dismissal of fewer than all *counts* in the plaintiff's *petition. Id.* at 243–44. The Court held that because the dismissed counts relied on the same facts as the counts still pending in the case, the trial court's dismissal did not dispose of a "distinct judicial unit." *Id.* at 244–45. Because *Gibson* arose in the context of a motion to dismiss claims asserted in a party's petition, it cannot be read as endorsing the idea that an interlocutory order imposing sanctions constitutes a "distinct judicial unit."

**7.** The former rule—Rule 81.06—was construed by this Court to give a trial court

absolute discretion to determine if its orders were final and appealable. *Speck v. Union Elec. Co.*, 731 S.W.2d 16, 20 (Mo. banc 1987) (abrogated by Rule 74.01(b)). This Court rejected that view when it later adopted Rule 74.01(b). *Comm. for Educ. Equal.*, 878 S.W.2d at 451; *Gibson*, 952 S.W.2d at 244. Unlike Rule 81.06, the new Rule 74.01(b) "conditioned the exercise of discretion by the trial court on the existence of a judgment that disposed of at least one claim as to one party." *Comm. for Educ. Equal.*, 878 S.W.2d at 451.

**8.** The federal rule states, in relevant part:

When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim— or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay . . . .

Fed.R.Civ.P. 54(b).

sanctions because of the opposing sides' failure to produce certain documents. *Id.* at 370–71. The sanctioned parties appealed and sought mandamus relief challenging the imposition of sanctions. *Id.* That court held that Rule 54(b) does not permit a trial court to certify an order awarding sanctions because the rule allows only for the immediate appeal of an order disposing of a separate "claim for relief," which federal courts have interpreted to mean a *substantive* claim. *Id.* at 371 (internal citations omitted). The court found that because the separate claim for sanctions was not a "substantive" claim, certification was improper. *Id.* In reaching its holding, the Seventh Circuit stated that "[t]he language of Rule 54(b) leaves little doubt that it indeed is limited to substantive claims." *Id.*

Subsequent to this Court's adoption of Rule 74.01(b), other federal courts have reached conclusions consistent with *Mulay Plastics. E.g., M.A. Mortenson Co. v. United States,* 877 F.2d 50, 52 (Fed.Cir. 1989) (award of sanctions not appealable under Rule 54(b) because not a substantive right or cause of action); *Heffington v. City of Saline,* 863 F.2d 48 (6th Cir.1988) (request for sanctions is not a claim within the meaning of Rule 54(b)). These cases also serve as persuasive authority. *Hem-*

*me v. Bharti,* 183 S.W.3d 593, 597 (Mo. banc 2006).[9]

While section 512.020(5) and Rule 74.01(b) do not permit immediate appeal of a trial court's order imposing sanctions, such orders can still be reviewed. Prior cases by this Court and the court of appeals recognize how review may be obtained. For example, an order imposing sanctions can be reviewed after a final judgment is entered on the underlying claims. *See, e.g., Leahy v. Leahy,* 858 S.W.2d 221, 228 (Mo. banc 1993) (reviewing imposition of sanctions after judgment entered on parent's motion seeking modification of child support); *see also D.S.P. v. R.E.P.,* 800 S.W.2d 766, 771 (Mo.App.1990) (reviewing impositions of sanctions along with trial court's order awarding child custody). Alternatively, if appeal is an inadequate remedy because irreparable harm will occur if immediate relief is not granted, a writ of prohibition can be used to obtain interlocutory review in the absence of a final judgment. *See Transit Cas. Co. ex rel. Pulitzer Publ'g Co. v. Transit Cas. Co. ex rel. Intervening Emp.,* 43 S.W.3d 293, 299 (Mo. banc 2001) ("As a general matter, the proper course for an aggrieved party without a final judgment is ordinarily by extraordinary writ."); *see, e.g., State ex rel. Common v. Darnold,* 120 S.W.3d

---

9. The dissenting opinion suggests that federal cases interpreting Fed.R.Civ.P. 54(b) are less persuasive because the federal rules allow for a broader range of cases to be reviewed on an interlocutory basis. While federal courts do allow greater review of interlocutory orders, they do not undermine the persuasiveness of federal cases interpreting Rule 54(b). In *Mulay Plastics,* for example, the Seventh Circuit's conclusion that an order imposing sanctions was not appealable was driven by the language of Rule 54(b), not the fact that the federal rules allow interlocutory appeals in other contexts. 742 F.2d at 371. Likewise, the dissent's assertion that federal cases are less persuasive because they no longer follow the "distinct judicial unit" concept is also an

invalid reason for ignoring federal cases. Federal courts have reached the conclusion that orders imposing sanctions are not immediately appealable due to the language in federal Rule 54(b), which requires a court order to dispose of a "claim for relief." *Id.* That language is identical to the language used by Rule 74.01(b), and interpretation of that phrase underlies the conclusion reached in this opinion. The dissent's assertion that this opinion has the effect of *sub silencio* overruling the distinct judicial unit test has no merit. Nothing in this opinion can or should be read as abrogating the requirement that a judgment must dispose of a distinct judicial unit before the judgment may be certified as final and appealable under Rule 74.01(b).

788, 790–92 (Mo.App.2003) (writ issued prohibiting imposition of discovery sanction); *Westfall v. Enright,* 643 S.W.2d 839, 840 (Mo.App.1982) (same). Therefore, a party wishing to challenge a trial court's imposition of sanctions can either appeal the trial court's order after a final judgment is entered on the underlying claim or claim or, when appropriate, seek a writ of prohibition before final judgment is entered.[10] The trial court's certification of its order as final and appealable under Rule 74.01 has no effect.

## Conclusion

Because the trial court's order imposing sanctions did not dispose of a "claim for relief," the trial court certification of its order as final and appealable under Rule 74.01 was ineffectual. Accordingly, the appeal is dismissed for lack of a final judgment as required by section 512.020(5).[11]

RUSSELL, FISCHER and PRICE, JJ., concur.

STITH, J., dissents in separate opinion filed.

TEITELMAN, C.J., and WOLFF, J., concur in opinion of STITH, J.

LAURA DENVIR STITH, Judge.

I respectfully dissent. This Court has jurisdiction over this appeal. The judgment below, denying Buemi's motion to enforce settlement but granting its related motion for sanctions for bad faith in settlement negotiations, properly was certified for interlocutory review under Rule 74.01(b) because it is a separate claim that constitutes a distinct judicial unit the resolution of which involves issues entirely separate from those remaining for trial below. This Court therefore has jurisdiction to review the judgment under Rule 74.01(b), and determine whether the award of sanctions was proper. It was not.

I would reverse the trial court's imposition of sanctions on the Kerckhoff defendants for allegedly acting in bad faith in signing a settlement agreement that they did not believe was binding. Rule 17.06 requires a written agreement setting forth the terms of settlement and executed by the parties. Here, none of the requirements of Rule 17.06 was satisfied by the document in question. Although labeled a mediation form and containing preprinted boilerplate language that would be included in a settlement agreement recorded on such a form, the document on its face shows that the mediator simply used the form to handwrite a statement noting that the parties had agreed in principle to settle. No terms were included or attached as required by Rule 17.06, nor, the record shows, had all terms been agreed to orally, and some still were being written even after the mediator prepared the document. Indeed, no money amount or any other agreed consideration was stated on or attached to the form, and the handwritten notation by the mediator stated that the

---

**10.** The Court acknowledges that it previously denied the Kerckhoff defendants' petition for an extraordinary writ that sought relief from the trial court's order imposing sanctions. The denial of their request for an extraordinary writ does not constitute a ruling on the merits of their challenge to the sanction order. Therefore, such denial does not preclude the Kerckhoff defendants from filing a new petition if circumstances arise that would make appeal an inadequate remedy, such as

an attempt to collect by the parties who were awarded monetary sanctions. *See State ex rel. Douglas Toyota III, Inc. v. Keeter,* 804 S.W.2d 750, 752 (Mo. banc 1991).

**11.** In light of the Court's dismissal of the appeal, the Kerckhoff defendants' motion for leave to file newly discovered evidence in support of their brief is overruled as moot.

agreement "in principle" still had to be submitted to the plaintiffs for approval.

While those of the parties who were present, including two of the Kerckhoff defendants, signed the form believing it was not binding, this does not constitute bad faith. They were correct; the form was not binding, nor did it purport to be anything other than a recordation of an agreement "in principle" of those present to try to work out certain other terms and submit certain issues to those parties not present. Nor did the Kerckhoffs have an obligation to share with the plaintiffs their personal beliefs as to whether settlement ultimately would be successful, any more than opposing parties ever have such an obligation in settlement negotiations.

## I.  THIS COURT HAS JURISDICTION UNDER RULE 74.01(b)

This appeal does not concern the merits of the underlying action but rather involves an appeal from an order denying a motion to enforce settlement but ordering sanctions against defendant for bad faith in refusing to finalize the settlement. Because the judgment appealed from does not resolve the entire controversy, "this Court, *sua sponte*, must determine its own jurisdiction of this appeal." *Comm. for Educ. Equal.*, 878 S.W.2d at 450 (Mo. banc 1994). Under both Rule 74.01 and section 512.020,[1] a "prerequisite to appellate review is that there be a final judgment." *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997).

While in the usual case a final judgment "resolves all issues in a case, leaving nothing for future determination," *id.*, section 512.020 states that appeal may be taken from "any ... final judgment" not simply from "the final judgment." § 512.020. That is the premise of Rule 74.01 and its many predecessors, which long have permitted appeals of judgments that do not finally resolve *all* issues in a case, so long as the ruling appealed from finally resolves the issue as to which appeal is sought in a manner permitted by this Court's then extant rules.[2]

At issue here is whether Rule 74.01(b) as currently constituted permits appeal from a ruling overruling a motion to enforce settlement but imposing sanctions on one of the parties for bad faith settlement, where the trial judge has designated the judgment as final for purposes of appeal and has stated that there is no just reason for delay. It does.

Rule 74.01(b) provides:

*When more than one claim for relief is presented in an action, whether as a*

---

1. All statutory references are to RSMo 2000, unless otherwise indicated. Section 512.020 provides:

   Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:

   . . . .

   (5) Final judgment in the case or from any special order after final judgment in the cause; but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment of the case.

2. *See, e.g.*, Rule 74.01 (1988); Rule 81.06 (1971); Rule 82.06 (1960); Rule 3.29 (1945). *See also Speck v. Union Elec. Co.*, 731 S.W.2d 16, 22 (Mo. banc 1987) (superseded by rule, see below) (for an appeal to lie there must be a judgment or order within the limits of section 512.020 but if there has been a separate trial before the court of particular claims and the court has designated them as final for purposes of appeal then "there is a final judgment within the limits prescribed by § 512.020").

claim, counterclaim, cross-claim, or third-party claim, or, when multiple parties are involved, *the court may enter a judgment as to one or more but fewer than all of the claims or parties* only upon express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated … shall not terminate the action….
(emphasis added).

Rule 74.01(b) tracks the language of Fed.R.Civ.P. 54(b), and for this reason the principal opinion erroneously suggests that this Court must interpret it in lockstep with the federal courts' interpretation of Rule 54(b). That simply is not the case. This Court has recognized that when its rules are substantially similar to federal rules on the same subject, federal cases interpreting such rules *are persuasive*, not determinative. *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446 at 451. To the contrary, "while federal interpretations of similar procedural rules can provide us illustrative and useful guidance; they are not controlling, even if the federal rule is nearly identical to Missouri's."[3] *Richter v. Union Pac. R. Co.*, 265 S.W.3d 294, 299 (Mo.App.2008). Accord *Giddens v. Kansas City So. Ry. Co.*, 29 S.W.3d 813, 820 (Mo. banc 2000). Differences in interpretation and dissimilarity of application of rules regarding certification for interlocutory review between state and federal courts are not surprising, for Fed.R.Civ.P. 54(b) is only one of numerous avenues for interlocutory review of cases in federal courts.[4]

In Missouri, matters not appealable under Rule 74.01(b) are reviewable only by writ or after final judgment resolving the entire action. *See, e.g., Rule 95* (mandamus); *Rule 97* (prohibition); *State ex rel. Common v. Darnold*, 120 S.W.3d 788, 790–92 (Mo.App.2003) (prohibition issued prohibiting imposition of discovery sanction). The principal opinion suggests that these rules provide a sufficient avenue for relief here, that the Kerckhoffs could simply seek a writ rather than appeal. But they tried that avenue for relief before seeking and obtaining certification for appeal under Rule 74(b). Twice. Both times this Court refused to issue its preliminary writ even though, as discussed in detail in Section II below, the trial court clearly had no authority to order sanctions against them. To suggest that this appeal must be denied and that they again must file a petition for writ to obtain the relief to which they assuredly are entitled is pointless—and not required by Rule 74(b).

Missouri's historical treatment of judgments resolving fewer than all claims parallels the federal approach only in part. Like the federal courts, Missouri cases historically determined if a matter could

---

**3.** For instance, the federal courts interpret the language in Fed.R.Civ.P. 41(a)(1)(A) allowing dismissal of an "action" without court order to allow only dismissal of the entire action, not merely a count thereof. *Richter*, 265 S.W.3d at 299. *Richter* rejects this approach as inconsistent with Missouri's historical practice under Rule 67.02(a) of permitting dismissal of counts or of the entire action prior to either the swearing in of the jury or the introduction of evidence at a bench trial without court approval. *Id.*

**4.** Matters not appealable under that rule may be appealed under 42 U.S.C. § 1292(b), *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 532, 115 S.Ct. 2322, 312 L.Ed.2d 462 (1995) (on appeal after district court certified for interlocutory appeal under 28 U.S.C. § 1292(b)), or under the collateral order doctrine, for instance. *See Will v. Hallock*, 546 U.S. 345, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006); *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

be subject to a separate appeal by whether it involved what Missouri courts then, as now, referred to as "a separate trial of any claim, cross-claim, counterclaim, or third party claim...." *Weir*, 262 S.W.2d at 599.

In 1988, this Court adopted the current Rule 74.01(b), modeling it on Fed.R.Civ.P. 54(b). Rule 74.01(b) narrowed considerably the claims that could be appealed prior to resolution of all issues.[5] But this Court continued to define the term "claim" as it long had done, as a "distinct judicial unit." *Gibson v. Brewer*, 952 S.W.2d 239 (Mo. banc 1997). Gibson did not coin the term but rather used it because it long had been a part of Missouri's determination of what constitute separately appealable claims. *See, e.g., Lipton Realty v. St. Louis Housing Authority*, 655 S.W.2d 792, 793 (Mo.App.1983) (holding that even under Rule 81.06, the predecessor to Rule 74.01(b), "for a partial disposition to be a proper subject for appellate review, it must state a distinct judicial unit, that is, a

judgment which terminates the action with respect to the claim adjudged").

In *Gibson*, Missouri chose to continue to apply that reasoning without regard to how the federal courts chose to change their interpretation of what types of claims may be appealable. *Gibson* so held even though federal courts no longer used the "judicial unit" concept in considering certifications for appeal. Instead, federal courts now permit an interlocutory appeal of, for example, the ruling on a plaintiff's cause of action, even if there is a counterclaim or cross-claim arising out of the same facts still pending. *Cold Metal Process*, 351 U.S. at 451–52, 76 S.Ct. 904.[6]

By contrast, in Missouri, the principle remained what it had been prior to *Speck* under Rule 81.06:

although a circuit court may designate its judgment final as to particular claims, this designation is effective only when the order disposes of a distinct "judicial unit." *Erslon [v. Cusumano*,

---

**5.** The relevant predecessor rule—former Rule 81.06—had been interpreted in *Speck v. Union Elec. Co.*, 731 S.W.2d 16, 20 n. 2 (Mo. banc 1987), to permit the trial court to certify *any issue* as to which a separate trial had been held before the court. By contrast, Rule 74.01(b) limited appealable rulings to those involving separate claims.

**6.** Before the adoption of Rule 54(b) in 1939 (when the federal rules of civil procedure were first promulgated as a whole), federal courts were more restrictive than they are now in regard to permitting appeals prior to resolution of all issues in a case. They permitted such appeals only if the judgment appealed from resolved a "single judicial unit." As the United States Supreme Court has noted:

> Under the single judicial unit theory of finality which was then recognized, the Court of Appeals would have been without jurisdiction [to consider the appeal of denial of a claim] until [the party's] counterclaim also had been decided by the same District Court. That would have been so even if the counterclaim did not arise out of the same

transaction and occurrence as Cold Metal's Claim.

*Cold Metal Process Co., v. United Eng'g & Foundry Co.*, 351 U.S. 445, 451–52, 76 S.Ct. 904, 100 L.Ed. 1311 (1956). As first adopted, Rule 54(b) then permitted appeal of a claim even if a counterclaim remained if the counterclaim was "permissive." *Id.* In 1946, however, Rule 54(b) was amended to permit appeal of a judgment resolving any single claim, even if a counterclaim is still pending, and visa versa. *Id. See also Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956); *Weir v. Brune*, 364 Mo. 415, 262 S.W.2d 597, 599–600 (1953) (recognizing federal standard for appeal requires a distinct judicial unit, which is defined as "the final determination of the issues arising from a set of facts involved in the same transaction or occurrence"). Rule 54(b) continues to operate in this way. *Reiter v. Cooper*, 507 U.S. 258, 264, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (Rule 54(b) "permits a district court to enter a separate final judgment on any claim or counterclaim").

691 S.W.2d 310, 312 (Mo.App.1985) ], . . . The required "judicial unit for appeal" has a settled meaning: "the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of a claim." *State ex rel. State Hwy. Comm'n v. Smith,* 303 S.W.2d 120, 123 (Mo.1957). *Gibson,* 952 S.W.2d at 244. For this reason, "Although a circuit court may designate its judgment final as to particular claims, this designation is effective only when the order disposes of a distinct 'judicial unit.'" *Id. Gibson* further clarified that a "judicial unit for an appeal" means "the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." *Id.* at 244.

The principal opinion sub silencio overrules *Gibson, Lipton Realty* and similar cases so it can blindly imitate federal law, ignoring the current and historically different interpretation of the term "claim" under Rule 74.01(b), namely the "distinct judicial unit" test by which Missouri courts evaluate a "claim." The practical result is to eviscerate the "distinct judicial unit" test, a standard of enduring vintage in Missouri and upon which courts and practitioners have relied for many years. *See e.g., Clay County ex rel. County Comm'n of Clay County v. Harley & Susie Bogue, Inc.,* 988 S.W.2d 102, 109 (Mo.App.1999) (Breckenridge, J.) (applying "distinct judicial unit" test); *Sisk v. Union Pacific R.R. Co.,* 138 S.W.3d 799, 802 (Mo.App.2004) (same); *Carney v. Yeager,* 231 S.W.3d 308, 310 (Mo.App.2007) (same). Such a change in Missouri procedure is unwarranted, and unrequested by any party.

The only remaining question—again, not briefed by any party—is whether a ruling on a motion to enforce a settlement agreement is a ruling on a separate claim or judicial unit or whether it is simply a ruling on an issue arising out of a transaction or occurrence, which does not fall within Rule 74.01(b).

The principal opinion states that only a claim set out in the pleadings can constitute a "claim" as that term is used in Rule 74.01(b) and, therefore, a distinct judicial unit. But Rule 74.01(b) does not state that appeal may be had of a claim for relief presented in a petition, cross-petition or answer. It says that appeal is permitted when more than "one claim for relief is presented in an *action*" (emphasis added).

"It is the content, substance, and effect of the [trial court's] order that determines finality and appealability." *Gibson,* 952 S.W.2d at 244. Normally, of course, claims for relief only will be presented in an action by way of the pleadings in the form of a petition, answer and so forth. But an agreement to settle a pending case by its very nature is not something that can be pleaded in the petition unless it is a petition to enforce settlement. While the latter petitions may be entertained, as discussed below, Missouri courts long have held that if a case is pending when the settlement issue arises, then the matter may be raised by filing a motion to enforce settlement in the pending action or by filing a counterclaim or affirmative defense. This Court specifically adopted this reasoning, noting:

> Missouri does not have a specific "process for enforcing an agreement settling a pending case." *Barton v. Snellson,* 735 S.W.2d 160, 161 (Mo.App.1987). Settlement may be raised as an affirmative defense or, as here, via a motion to enforce the settlement agreement. *Id.* A motion to enforce a settlement adds to the underlying case a collateral action seeking specific performance of the agreement. *Landmark Bank v. First*

*Nat. Bank in Madison,* 738 S.W.2d 922, 923 (Mo.App.1987).

*Eaton v. Mallinckrodt, Inc.,* 224 S.W.3d 596, 599 (Mo. banc 2007) (emphasis added). As noted in *Ingram v. Rinehart,* 108 S.W.3d 783, 789 (Mo.App.2003), such a motion to enforce settlement is for resolution by the Court, not the jury, whether presented as an issue of law or if factual issues exist, for it concerns matters separate from the claims raised in the underlying petition, not the merits. *Id.* at 788–89. This means:

> Such a motion may be filed in the underlying action and, in effect, adds a collateral action seeking specific performance of the settlement agreement. *Wenneker v. Frager,* 448 S.W.2d 932, 936 (Mo.App. 1969). An action for specific performance invokes the equity jurisdiction of the court.

*Ingram,* 108 S.W.3d at 787–88. In *Wenneker,* 448 S.W.2d at 936, the court had held that a motion for judgment seeking to enforce settlement filed in a pending action or the filing of a separate petition for judgment are both acceptable ways to seek to enforce a settlement agreement.[7]

As noted, Rule 74.01(b) permits certification for appeal "when more than one claim for relief is presented in an action, whether as a claim, counterclaim . . ." etc. At the time the petition and answer were filed, only the matters in the petition and answer fell within this description. Upon the filing of the motion to enforce settlement, however, that changed. The motion is in the nature of a separate action in equity for the specific performance of the settlement agreement. If no action were then pending, it could be filed as its own action and relief accorded if merited by the pleadings and the facts, as noted above.

But, when an action is pending already between the parties, the above cases permit the matter to be determined by way of motion filed in the underlying action. In either case, the matter is a separate claim for relief. When presented as part of a larger action involving multiple claims and parties, it is appealable separately under Rule 74.01(b) if certified for immediate appeal in the trial court's discretion. *See Pathway Financial v. Schade,* 793 S.W.2d 464, 467 (Mo.App.1990) ("Arguably the trial court could have made the denial [of the motion to enforce settlement] final for purpose of appeal under Rule 74.01. We do not reach that issue here.").

Here, the trial court entered an order ruling on the motion to enforce settlement. It overruled the motion but granted a motion for sanctions filed therewith by the plaintiffs and overruled a parallel motion filed by the defendants seeking sanctions for filing a frivolous motion to enforce settlement. The trial court's decision to exercise its discretion to certify this ruling for immediate appeal was not improper.

---

**7.** *Gaunt v. Shelter Mut. Ins. Co.,* 808 S.W.2d 401, 407 (Mo.App.1991), approved its filing as a counterclaim where there was no objection to use of this procedural vehicle. *See also McDowell v. Kearns,* 758 S.W.2d 481 (Mo. App.1988) (separate suit for specific performance); *Leffler v. Bi–State Development Agency,* 612 S.W.2d 835 (Mo.App.1981) (motion to enforce settlement). *Ingram* and cases relying on it have assumed that a ruling granting a motion to enforce settlement would be appealable as a final judgment, but that a ruling denying such a motion would not be appealable until all other issues in the case are resolved, and then could be considered along with other issues on appeal of the entire case. *Ingram,* 108 S.W.3d at 788. While certainly the ruling would be appealable at the close of the case, the opinions do not consider or address whether the ruling would be appropriate for certification under Rule 74.01. Indeed, it is not logical that a refusal to enforce a settlement would be separately appealable if filed in the form of a counterclaim or as a petition to enforce settlement, but not if the same relief is sought by motion.

The "content, substance and effect" of the judgment arising from the ruling on the motion to enforce settlement and the Kerckhoff defendants' purported misconduct in connection with the settlement are altogether different from the "content, substance, and effect" of any judgment that ultimately may dispose of the plaintiffs' claims for damages and injunctive relief in the underlying action. They bear no relationship to the law that will govern adjudication of the homeowner plaintiffs' underlying tort and contract claims.[8]

The principal opinion would hold that even if the ruling on the motion to enforce settlement were separately appealable for the reasons noted above, the sanctions ordered based on the trial judge's erroneous belief that the Kerckhoff defendants did not act in good faith in negotiating the failed settlement is not appealable. Yet the two issues can be considered only together, for the sanctions arose out of the court's ruling in the course of denying the order to enforce settlement that bad faith had occurred.

If the law were as the principal opinion suggests, then even if the plaintiffs had appealed the court's refusal to enforce the settlement under Rule 74.01(b), the sanctions imposed on the defendants in the course of that ruling could not have been considered as a part of that interlocutory review, even though they concerned only the settlement.

Similarly, even were all claims stated in the petition against a party finally disposed and the order doing so properly (even under the principal opinion's reading of the rule) appealed under Rule 74.01(b), any sanctions ordered against that party could not be included in that appeal because a request for sanctions was not made as a separate "claim" in the petition. Therefore, it would need to remain pending below until all other issues were resolved—rather completely defeating the purpose of allowing a party to be removed from the case in the trial court once all claims against it are disposed.

In sum, I would hold that the judgment denying the motion to enforce settlement but imposing sanctions clearly satisfies the definition of "a distinct judicial unit," and the trial court did not err in certifying it for appeal under Rule 74.01(b).

## II. SANCTIONS WERE IMPOSED IMPROPERLY

Turning to the merits, I would hold that the trial court abused its discretion in imposing sanctions on the Kerckhoff defendants. The trial court erred in imposing sanctions on the Kerckhoff defendants on the basis that they executed the mediated settlement agreement form that said an agreement was reached in principle despite believing, and without informing the other parties, that they did not believe it was binding.

Rule 17.06 provides:

---

**8.** While I believe the circumstances of this case present a situation in which a judgment for sanctions regarding pretrial settlement negotiations satisfied the definition of "a distinct judicial unit" because a motion to enforce settlement agreement is a distinct judicial unit, nothing in this opinion should be construed to indicate that I necessarily would view sanctions rulings in other contexts as "distinct judicial units." This is especially true when the sanctions are requested in or-

der to enforce discovery. Such rulings, of course, may be reviewed by writ in the discretion of the appellate court, *see e.g.* Rule 95 (mandamus); Rule 97 (prohibition); *State ex rel. Common v. Darnold*, 120 S.W.3d 788, 790–92 (Mo.App.2003) (prohibition issued prohibiting imposition of discovery sanction), or after final judgment resolving the entire action, *see, e.g., Leahy v. Leahy*, 858 S.W.2d 221, 228 (Mo. banc 1993).

(a) An alternative dispute resolution process undertaken pursuant to this Rule 17 shall be regarded as settlement negotiations. Any communications relating to the subject matter of such dispute made during the alternative dispute resolution process by a participant or any other person present at the process shall be a confidential communication. No admission, representation, statement or other confidential communication made in setting up or conducting such process shall be admissible as evidence or subject to discovery, except that, no fact independently discoverable shall be immune from discovery by virtue of having been disclosed in such confidential communication.

. . . .

*(c) Settlement shall be by written document setting out the essential terms of the agreement executed after the termination of the alternative dispute resolution process.*

*Rule 17.06* (emphasis added).

As the Kerckhoff defendants note, Rule 17.06(a) expressly states that communications made during a Rule 17 meeting are confidential communications and that "no admission, representation, statement or other confidential communication" made during such a meeting "shall be admissible as evidence or subject to discovery." They note that the trial court should not have permitted admission of comments made and evidence of events occurring during the Rule 17 meeting. *See Williams v. Kansas City Title Loan Co.*, 314 S.W.3d 868, 871 (Mo.App.2010).

The homeowners recognize the confidential nature of communications during a Rule 17 meeting but, without citation to supporting authority, question whether that confidentiality is intended to be limited to a trial on the merits as opposed to a hearing on sanctions regarding what was said at the settlement meeting and what each party's state of mind was while attending the meeting. They say that the Kerckhoff defendants' statements at the meeting should be admissible to show that there was a settlement and that the Kerckhoffs acted in bad faith in failing to tell them that the Kerckhoffs did not believe there was a settlement.

While the parties spend the majority of their briefs on this issue, I believe the key issue in resolving the dispute is a different one. The trial court premised its imposition of sanctions on findings that "a settlement in principle was reached at [the] mediation" and that the Kerckhoff defendants "knew and agreed to those principles as developed on the term sheets presented at the hearing."

But Rule 17.06(c) expressly provides what constitutes a settlement. It states, "Settlement shall be by a written document setting out the essential terms of the agreement executed after the termination of the alternative dispute resolution process." These requirements of Rule 17.06(c) are not satisfied here.

The only written document coming out of the settlement meeting was the mediation form. Preprinted language on this form said that "[b]y signing this MEDIATED SETTLEMENT AGREEMENT (MSA), the parties acknowledge that . . . any party may seek enforcement of this MSA." But the form was not filled out. Instead, the mediator used the form to handwrite language stating that there only was "a settlement in principle" and that the terms of settlement still had to be submitted to some of the homeowner plaintiffs. Neither the parties' "term sheets" 1 and 2, prepared prior to the time the mediator prepared this document, nor term sheet 3, which was not prepared until after the mediator wrote his note, were appended to the document or otherwise

incorporated into it. No details or terms of the alleged settlement were set out in the mediation form. This was not a settlement agreement, for the requirement of Rule 17.06(c) that "the essential terms of the agreement" be set out in the document was not satisfied. In fact, no term was set out, not even the amount or basis of settlement.

Additionally, Rule 17.06(c) requires that the written document be executed. *See Williams,* 314 S.W.3d at 873. Here, only some of the defendants and *none* of the plaintiffs signed the mediation form. The lack of execution also precluded a finding of an enforceable settlement agreement under Rule 17.06(c) even had the terms been specified.

While the trial court correctly concluded that the agreement was not binding, it believed this to be true only because the term sheets were not attached. It, therefore, found that the Kerckhoff defendants were acting in bad faith in signing it without telling the other side of this problem and without telling the other side that the incomplete nature of the agreement and documents caused the Kerckhoffs to believe that the mediated settlement agreement was not binding. The court's ruling was based on an incorrect premise.

What the parties had was a form that contained no agreement terms, that was not executed by all the parties and that on its face said it set out only settlement principles, not a settlement. But Rule 17.06 does not recognize a "settlement in principle" as a settlement binding on parties. Agreeing "in principle" to settle without agreeing on the essential terms in writing simply is not a settlement under Rule 17.06. In fact, the mediator correctly told one of the parties before signing that the agreement in principle would not be binding. While the form did say in pre-printed language that it would be "en-

forced," absent written terms and execution by all parties, there simply was nothing *to* enforce.

The legal wrangling in this case shows the reason for the requirement of a written agreement. If the essential terms of a settlement agreement are set out in an agreement executed by the parties, then there is a written document that can be taken to the court to enforce should a disagreement later arise. Rule 17.06 itself provides that the enforcement is based on the terms agreed to in writing. *Rule 17.06(c)* ("Settlement shall be by a written document setting out the essential terms of the agreement executed after the termination of the alternative dispute resolution process").

While oral settlement agreements are enforceable in some circumstances at common law, *see, e.g., B–Mall Co. v. Williamson,* 977 S.W.2d 74, 77 (Mo.App.1998), Rule 17 takes a different approach intended to avoid concerns raised by the common law method. Its requirement of a written and executed settlement agreement setting out all essential terms avoids the problem of breaching the confidentiality of statements made in settlement negotiations and the inhibiting effect this would have on open and full negotiations; it also avoids placing the trial judge in the position of determining whether there was an unwritten settlement and the nature of its terms. Instead, it sets out a bright line rule:

> Rule 17 means what it says: the essential terms of settlements reached during court-ordered mediation sessions must be reduced to a writing signed by the parties in order for such settlements to be enforced.

*Williams,* 314 S.W.3d at 873.

For these reasons, there could be no bad faith in fewer than all of the Kerckhoff defendants signing the mediation form be-

lieving it would not be binding, for the mediation form was without essential terms and so, as a matter of law, the requirements for a binding settlement agreement were not met. Even the mediator hand-wrote a note on the document that it was not a settlement but a settlement "in principle," which under Rule 17.06 means it was not a binding agreement at all.[9] No basis is cited for suggesting that the Kerckhoff defendants had an obligation to tell the plaintiffs or their counsel that they agreed with the mediator that the document was not binding and that a document that on its face was not a settlement agreement did not bind them.

Similarly, the suggestion that the Kerckhoffs mediated in bad faith because one of the Kerckhoff defendants was not present proves too much. If it is bad faith whenever one or more of multiple defendants fails to attend a settlement conference, then the numbers of parties that will be found to be in bad faith would multiply precipitously. That is particularly true where, as here, there is no showing that the attending defendants incorrectly represented that they could settle on behalf of the non-attending defendant, nor was there any showing that they had the ability to compel his attendance. Indeed, only three of the 28 plaintiffs attended the settlement conference, and the three that did attend did not have authority to settle on behalf of those not attending. Yet the trial court correctly did not infer bad faith from this circumstance.

The later e-mail exchanges among the parties simply confirmed that there had been no settlement. Both the homeowners' and Kerckhoffs' counsels' e-mails showed that they were trying to reach agreement on a future settlement but that they were using different documents as the basis on which to do so, and that neither side was able to persuade all of its co-parties of the merits of the terms proposed. To the extent that the trial court's sanctions are based on its suggestion that the Kerckhoff defendants had an obligation to reveal to opposing counsel that they did not believe that settlement ultimately would be achieved, such a ruling is incorrect. It is quite permissible for each side negotiating a settlement to keep its ultimate settlement numbers or terms confidential to the extent possible, and neither has a fiduciary or other obligation to reveal its thinking to the other side.

This is not to say that providing intentionally false or incomplete information in a pleading or motion or in response to discovery requests or otherwise is not sanctionable. It is. *Rule 55.03(d)* (authorizing sanctions in the context of pleadings and motions); *Rule 61.01* (authorizing sanctions in the context of discovery). But one side not sharing with its opponent its thoughts as to whether an acceptable agreement ever will be accomplished is not sanctionable conduct; trial or settlement strategy is inherently a confidential matter. Whether negotiations would be successful or whether one party was more committed than another to settlement could no more be assured in this circumstance than in other settlement negotiations, and the court does not look behind the parties' actions in such a circumstance. The fact that the homeowners believed the case might yet settle and that the Kerckhoffs did not believe that terms agreeable to all parties ultimately could be found, as it is suggested occurred here, does not constitute bad faith.

---

9. As *Williams* notes, "Rule 17.06(d) provides that the mediator's confidentiality obligations do not apply to testimony concerning the circumstances surrounding the execution of the written settlement agreement itself (or subsequent events), in a proceeding to enforce that written agreement." 314 S.W.3d at 872.

Finally, the trial court did not err in overruling the Kerckhoffs' cross-motion for sanctions against counsel for the homeowners and PF Development for filing the motion to enforce settlement. While, for the reasons noted above, the motion was without merit, that does not mean it was frivolous.[10] The trial court clearly took the issue seriously, undertook days of evidentiary hearings, and erroneously concluded that if three "term sheets" had been attached to the mediation form, then a settlement agreement would have existed, despite the assurance and written note of the mediator to the contrary and despite the failure to meet the other requirements of Rule 17.06(c). In these circumstances, I cannot conclude that the trial court abused its discretion in concluding that the motion to enforce settlement agreement was not frivolous.

---

**10.** While, if a pleading or motion is "initiated frivolously or brought in bad faith, the trial court has the discretion to impose sanctions as a deterrent to similar conduct in the future and to recompense the other party," *Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 186 (Mo.App.1999), the standard of review on a ruling on a motion to impose sanctions for signing a frivolous motion is abuse of discretion, *Camden v. Matthews*, 306 S.W.3d 680, 683 (Mo.App.2010).