

## SUPREME COURT OF MISSOURI
### en banc

JAMES J. WILSON, et al.,      )       *Opinion issued January 14, 2020*
)
     Respondents,      )
v.      )
)
CITY OF ST. LOUIS, et al.,      )
)
     Respondents,      )
)
and      )
)
TISHAURA O. JONES,      )
)
     Appellant.      )
)      No. SC97544
CITY OF ST. LOUIS,      )
)
     Respondent,      )
v.      )
)
STATE OF MISSOURI,      )
)
     Appellant.      )

### APPEALS FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
#### The Honorable Michael F. Stelzer, Judge

Before addressing the merits of these appeals, this Court has a duty to determine

whether it has jurisdiction. *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners'*

*Ass'n, Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017). For this Court to have jurisdiction,

the judgment entered by the circuit court and appealed by the parties must have been a

"final judgment" as that phrase is used in section 512.020(5).[1]  Because the judgments appealed from in this case are neither "final judgments" in the sense that they resolve all claims against all parties, nor "final judgments" in the sense that they are eligible for certification as "final" under Rule 74.01(b) because they dispose of a "judicial unit" of claims, they are not "final judgments" as required under section 512.020(5).  Accordingly, this Court has no choice but to dismiss these appeals.

**Background**

In January 2017, James Wilson and Charles Lane (collectively, "Plaintiffs"), filed a six-count petition against the city of St. Louis ("the City"), the state of Missouri, the Treasurer of the City of St. Louis, Tishaura Jones ("Treasurer Jones"), and four municipal officers[2] in the city of St. Louis (collectively, "Defendants").  Two counts from Plaintiffs' original petition were dismissed.[3]  The remaining counts are set forth below.

Count I seeks a judgment declaring sections 82.485 and 82.487 (hereinafter, "the parking statutes") unconstitutional in violation of article VI, section 22 of the Missouri

---

[1]  All statutory references are to RSMo 2016.

[2]  These municipal officers include: Carl Phillips, the director of parking operations of the city of St. Louis; Darlene Green, the comptroller of the city of St. Louis; Stephen Runde, the director of the city of St. Louis department of streets; and Freeman Bosley, Sr., the chair of the city of St. Louis parking supervisor.

[3]  Count III, seeking a judgment declaring the city ordinances creating a parking commission are invalid because those ordinances violate the Charter for the city of St. Louis, was voluntarily dismissed by Plaintiffs in April 2018.  Count V, seeking a writ of quo warranto to oust Treasurer Jones as parking supervisor and the municipal officers as commissioners, was dismissed for lack of standing in September 2017.

Constitution as well as an injunction prohibiting Defendants from taking action pursuant to those statutes. Count II seeks a judgment declaring Treasurer Jones violated a city ordinance and article II, section 1 of the Missouri Constitution (which provides only the legislature has the power to set a range of punishment) by changing the schedule of parking fines and penalties without first submitting a budget to the board of aldermen of the city of St. Louis. Count IV seeks a judgment declaring Treasurer Jones violated city ordinance 64102 (which regulates the solicitation and award of contracts for professional services) by entering into a contract with an underwriting firm that was not in compliance with that ordinance. Count VI seeks a judgment declaring city ordinances 69809 and 70057[4] invalid because they are inconsistent with the responsibilities of the city office of treasurer (as set forth in Charter article XV, section 24), the county office of treasurer (as set forth in section 54.010), the parking statutes, and article VI, sections 23 and 25 of the Missouri Constitution (which prohibit local governmental bodies from granting public money to private persons).

After the suit commenced, Jeffery Boyd ("Intervenor") filed a motion to intervene, which the circuit court sustained. Counts I through IV of Intervenor's petition are substantially the same as Counts I though IV of Plaintiffs' original petition. Count V in Intervenor's petition seeks a judgment declaring section 479.011 and city ordinance 67513 (which, collectively, authorize a system of extrajudicial adjudication of parking

---

[4] Plaintiffs' original petition asserted only that Ordinance 69809 is invalid, but in December 2017, Plaintiffs amended their original Count VI to assert Ordinance 70057 also is invalid.

3

ordinance violations in the city of St. Louis) unconstitutional in violation of article V, section 23 of the Missouri Constitution (which provides the municipal divisions of circuit courts have exclusive original jurisdiction over municipal ordinance violations).

After Intervenor was granted intervention and his petition was filed, the City asserted a cross-claim against its co-defendant, the state. The City's cross-claim sought a judgment declaring the parking statutes are unconstitutional or otherwise invalid and, therefore, the city ordinances govern the parking commission in St. Louis. On April 5, 2018, the circuit court sustained the City's motion for summary judgment on this cross-claim (hereinafter, the "April 5 Order").[5]

Shortly thereafter, Plaintiffs and Intervenor filed a joint motion for partial summary judgment on Count I in each of their respective petitions. These counts assert many of the same arguments as the City asserted in its cross-claim, including the argument on which the circuit court entered judgment for the City in the April 5 Order. The circuit court granted Plaintiffs' and Intervenor's joint motion on October 25, 2018, in two separate orders labeled "judgments." In the first (hereinafter, the "October 25 Declaratory Order"), the circuit court followed its April 5 Order and declared that the parking statutes are unconstitutional and cannot be severed. In the second (hereinafter,

---

[5] Treasurer Jones moved to certify the April 5 Order for immediate appeal pursuant to Rule 74.01(b). The circuit court denied that request on the ground that the April 5 Order did not dispose of a "judicial unit" of claims because, even though the court had ruled on the City's cross-claim for declaratory judgment, it had not yet ruled on the nearly identical claims in Count I of Plaintiffs' and Intervenor's respective petitions, and those claims sought injunctive relief in addition to declaratory relief presenting issues not raised in the City's cross-claim.

4

the "October 25 Injunctive Order"), the circuit court granted the permanent injunctive relief sought in Count I of both Plaintiffs' and Intervenor's respective petitions.

The circuit court certified the October 25 Injunctive Order for immediate appeal pursuant to Rule 74.01(b). Because the October 25 Injunctive Order incorporated by express reference the October 25 Declaratory Order and the April 5 Order, this certification under Rule 74.01(b) presumably was meant to apply to those as well. To remove any doubt, the City later moved to have the October 25 Declaratory Order and the April 5 Order separately certified under Rule 74.01(b), and the circuit court sustained that motion on January 2, 2019.

To review, Count I of the City's cross-claim was resolved in the April 5 Order and the state now appeals from that judgment. Count I in each of Plaintiffs' and Intervenor's respective petitions was not resolved completely by the October 25 Declaratory Order or the October 25 Injunctive Order but was disposed of completely by the combined effect of those two orders. More precisely, as explained more fully below, because the former incorporates the latter by express reference, the October 25 Injunctive Order is the only true "judgment" resolving completely Count I in Plaintiffs' petition or Count I in Intervenor's petition. The state appeals from the October 25 Injunctive Order (which fully resolves Count I in Plaintiffs' and Intervenor's respective petitions), but Treasurer Jones appeals only from the October 25 Declaratory Order (which does not fully resolve any claim in any petition). Meanwhile, Plaintiffs' Count II, Count IV, and Count VI and Intervenor's Count II, Count IV, and Count V remain pending.

5

**Analysis**

"The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists." *First Nat'l Bank of Dieterich*, 515 S.W.3d at 221 (quotation marks omitted). Although many statutes govern "the right to appeal, the only statute even potentially applicable to the present case is section 512.020(5)," which provides that "final judgments" are appealable. *Id*.

"[A] judgment is a legally enforceable judicial order that fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim." *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019).[6] "If a judgment resolves all claims by and against all parties, or it resolves the last such claim and some (but not all) claims have been resolved previously, it is commonly referred to as a 'final judgment.'" *Id*. (footnote omitted). *See also Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012) ("A final judgment resolves all issues in a case, leaving nothing for future determination.") (quotation marks omitted). Because Plaintiffs and Intervenor each have several claims still pending in the circuit court, the judgments in this case are not final in this sense.

---

[6] As used in this definition, the word "claim" means "(1) a short and plain statement of the facts showing the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader claims to be entitled." Rule 55.05. Even if multiple forms of relief are sought with respect to one set of facts, it is still one claim, and an order resolving some prayers for relief and not others does not fully resolve that claim and is not a judgment as defined in *Asel. See Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994) (dismissing the appeal, noting "the circuit court did not dispose of all of the remedies sought as to any one claim for relief").

**A. Certification under Rule 74.01(b)**

As noted above, a judgment can be appealable as a "final judgment" under section 512.020(5) if it resolves every claim (or, at least, the last unresolved claim) in a lawsuit. But that is not the only type of judgment that qualifies as a "final judgment" under section 512.020(5). Rule 74.01(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

The second sentence of this rule restates the general rule that a judgment resolving one or more claims but leaving one or more claims unresolved is not a "final judgment" for purposes of section 512.020(5) and, because it is interlocutory only, can be revised or withdrawn at any time prior to the entry of a judgment resolving the last of the claims in the lawsuit. *See State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 401 (Mo. banc 2016) ("[A] final judgment necessarily incorporates all prior orders or judgments that adjudicated some – but fewer than all – of the claims and the rights and liabilities of all the parties.").

The first sentence of Rule 74.01(b), however, states an exception to this general rule: the circuit court may certify for immediate appeal a "judgment as to one or more but

7

fewer than all of the claims or parties" if the court expressly finds there is no just reason for delaying the appeal until all claims are resolved.

But this Court has never construed the phrase "final judgment" in section 512.020(5) so broadly as to allow certification under Rule 74.01(b) of every judgment resolving one or more (but fewer than all) the claims in a lawsuit. To do so would make "judgment" and "final judgment" synonymous, i.e., it would give no meaning to the word "final" in the statute. *See Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 726 (Mo. banc 2017) ("Because each word of a statute is presumed to have been included for a particular purpose, an interpretation rendering statutory language redundant or without meaning is disfavored.") (quoting Matthew Davis, Note, *Statutory Interpretation in Missouri*, 81 Mo. L. Rev. 1127, 1136 (2016)).

Instead, such a judgment must be "final" in some sense, even if it is not final in the sense of resolving all claims (or the last claim) in a lawsuit. As a result, this Court has held the phrase "final judgment" in section 512.020(5) extends only to judgments that are final with respect to a "judicial unit" of claims in a lawsuit. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997).[7] Said another way, a judgment resolving one or more

---

[7] In *Gibson*, this Court described the process of certifying for immediate appeal under Rule 74.01(b) a judgment that disposed of a "judicial unit" of claims as an "exception" to the mandate in section 512.020(5) that only "final judgments" are appealable. *Gibson*, 952 S.W.2d at 244. This is incorrect, of course, because "[t]his Court has no authority to grant a right of appeal beyond that given by statute." *First Nat'l Bank of Dieterich*, 515 S.W.3d at 222. As a result, a better description is that this Court has construed the phrase "final judgment" in section 512.020(5) to include judgments disposing of a "judicial unit" as well as judgments resolving all claims (or the last claim) in a lawsuit.

8

claims but leaving one or more claims unresolved is eligible for certification under Rule 74.01(b) as a "final judgment" for purposes of section 512.020(5) only if it disposes of a "judicial unit" of claims.

The first key to understanding whether a judgment disposes of a "judicial unit" of claims and, therefore, is eligible to be certified for immediate appeal under Rule 74.01(b), lies in the language of the rule itself. A judgment is eligible for such certification if it is "a judgment as to one or more but fewer than all of the claims *or parties*[.]" Rule 74.01(b) (emphasis added). Accordingly, the first alternative meaning of "judicial unit" is a judgment that disposes of all claims by or against one or more – but fewer than all – of the parties. *See Gibson*, 952 S.W.2d at 245 (The judgment resolved a "judicial unit" because it "resolved all legal issues and left open no remedies for the Gibsons against the Diocese …. When one defendant, but not all defendants, is dismissed from a case, the circuit court may" certify that judgment for immediate appeal under Rule 74.04(b).). Such a judgment is a "final judgment" – as the legislature uses that phrase in section 512.020(5) – because the judgment resolves all of the claims in a lawsuit from the point of view of at least one party, even though other claims by or against other parties remain to be resolved. *Id.*[8]

---

[8]  In the wake of *Gibson*, this Court found two other orders ineligible for certification under Rule 74.01(b). In doing so, the Court stated that these orders did not dispose of a "judicial unit." In *Buemi v. Kerckhoff*, 359 S.W.3d 16, 21 (Mo. banc 2011), the Court held an order sustaining a motion for sanctions did not dispose of a "judicial unit" because "a motion for sanctions is not a legal claim filed 'in an action' by way of a petition, counterclaim, cross-claim, or third-party claim, [and, therefore,] it does not fall within the definition of a 'claim for relief,' as that term is used in Rule 74.01(b)." In *Ndegwa*, 371 S.W.3d at 801, the Court held an order did not dispose

The second alternative meaning of "judicial unit" is a judgment that resolves one or more claims that are **distinct** from those claims that remain to be resolved. Again, in *Gibson*, this Court held a judgment dismissing two claims did not dispose of a "distinct" judicial unit of claims because the dismissed claims "expressly incorporate the same facts as the counts pending in the circuit court." *Gibson*, 952 S.W.2d at 244. *See also First Nat'l Bank of Dieterich*, 515 S.W.3d at 222 (explaining the judgment was not eligible for certification under Rule 74.01(b) because "[t]he Bank's claim for declaratory judgment

---

of a "judicial unit" because it was "a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." *Buemi* and *Ndegwa* are correct in holding that neither of the orders was eligible for certification under Rule 74.01(b), but the language in these cases is at least imprecise. The problem with the orders in *Buemi* and *Ndegwa* was not that they were judgments that failed to dispose of a "judicial unit." The problem is that neither order was a judgment at all. "[A] judgment is a legally enforceable judicial order that fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim." *Henderson*, 566 S.W.3d at 598. As the Court explained in *Buemi*, 359 S.W.3d at 21, a motion for sanctions is not a "claim." Therefore, an order granting such a motion cannot be a judgment. Similarly, as the Court explained in *Ndegwa*, 371 S.W.3d at 801, the order resolved only part of a claim, not the entire claim. Such an order, too, cannot be a judgment. To be eligible for certification pursuant to Rule 74.01(b) as an appealable "final judgment" under section 512.020(5), the order must – at a minimum – be a judgment. The orders in *Buemi* and *Ndegwa* failed to meet this test, and the Court should have dismissed those appeals on that basis without considering whether either order disposed of a "judicial unit." *See also Comm. for Educ. Equal.*, 878 S.W.2d at 452 (holding, "[b]ecause remedies are left wholly unresolved regarding each of the claims for relief made before the trial court, the judgment is not final" even though, to be precise, the order could never have been a judgment in the first place because it left "wholly unresolved [remedies] regarding each of the claims for relief"). To be fair, *Buemi*, *Ndegwa*, and *Committee for Educational Equality* were written at a time when the language of Rule 74.01(a) had given rise to "persistent confusion surrounding the issues of what a judgment is[.]" *Henderson*, 566 S.W.3d at 598. Nevertheless, precision in this analysis is required because any failure to keep distinct the two criteria that must be met to make a judgment eligible for certification under Rule 74.01(b) – i.e., that (1) there must be a judgment, and (2) this judgment must dispose of a "judicial unit" of claims – risks the sort of "unintended and unauthorized expansions of this rule" that this Court in *First Nat'l Bank of Dieterich*, 515 S.W.3d at 222, explained the "judicial unit" requirement was meant to prevent.

10

(which the judgment resolves) and the Bank's claim for money damages due to the Bank's alleged slander of title (which the judgment does not resolve) arise out of the same transaction or occurrence"). In other words, a judgment resolves a "distinct" judicial unit if it resolves claims that do not arise "from the same set of facts, and the same transactions and occurrences, as the counts" yet to be disposed of in the circuit court. *Gibson*, 952 S.W.2d at 244. *See also First Nat'l Bank of Dieterich*, 515 S.W.3d at 222 ("[T]he 'effect of Rule 74.01(b) is to permit severance of any *unrelated substantive claim* for relief of the parties and to allow appeal of a final judgment on those severed claims.'") (quoting *Buemi*, 359 S.W.3d at 21); *Ndegwa*, 371 S.W.3d at 802 ("It is 'differing,' 'separate,' 'distinct' transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim.") (quoting *Gibson*, 952 S.W.2d at 244); *Comm. for Educ. Equal.*, 878 S.W.2d at 451 ("[C]laims are considered separate if they require proof of different facts and the application of distinguishable law, subject to the limitation that severing the claims does not run afoul of the doctrine forbidding the splitting of a cause of action."). To be clear, distinctness may exist even though there is some connection (i.e., some shared facts or circumstances) between the resolved and unresolved claims. *See Comm. for Educ. Equal.*, 878 S.W.2d at 452 (analyzing the claims in *International Minerals & Chemical Corp. v. Avon Products*, 817 S.W.2d 903 (Mo. banc 1991), and noting that a judgment resolving some but not all claims was eligible to be certified for immediate appeal because, "[e]ven though the indemnity claim and the patent infringement claim

11

were connected, each involved *different legal theories and different operative facts*.")
(emphasis added).

In sum, therefore, a "final judgment" for purposes of section 512.020(5) must satisfy the following criteria. First, it must be a judgment (i.e., it must fully resolve at least one claim in a lawsuit and establish all the rights and liabilities of the parties with respect to that claim).[9] Second, it must be "final," either because it disposes of all claims (or the last claim) in a lawsuit, or because it has been certified for immediate appeal pursuant to Rule 74.01(b). A judgment is eligible to be certified under Rule 74.01(b) only if it disposes of a "judicial unit" of claims, meaning it: (a) disposes of all claims by or against at least one party, or (b) it disposes of one or more claims that are sufficiently distinct from the claims that remain pending in the circuit court. Determining whether these criteria are met is a question of law and depends on "the content, substance, and effect of the order," not the circuit court's designation. *Gibson*, 952 S.W.2d at 244.

If, as a matter of law, a judgment is eligible for certification under Rule 74.01(b), the circuit court may – but is not required to – certify the judgment for immediate appeal under Rule 74.01(b). This certification is a matter of discretion, based upon whether the circuit court is persuaded and expressly finds in its certification that "there is no just reason" for delaying appeal of this judgment until a final judgment (in the sense of disposing of the last claim) is entered. To be clear, however, the question of whether a

---

[9] To satisfy this first criteria, the judgment must be in writing, signed by the judge, and expressly denominated a judgment. Rule 74.01(a).

12

judgment is eligible for certification under Rule 74.01(b) is a question of law on which the circuit court has no discretion; only the question of whether an eligible judgment should be certified under Rule 74.01(b) is left to the sound exercise of the circuit court's discretion.

As with any discretionary decision, the question of whether the circuit court should certify a judgment as "final" under Rule 74.01(b) will be driven by the facts and circumstances of the case. This Court has observed:

> At times, principles of judicial economy will militate in favor of certifying "no just reason for delay" to allow an appeal of an isolated claim. At other times, principles of judicial economy will be better served by staying a declaration or an execution of a judgment to permit the parties to rectify the source of conflict without the expense, time and energy consumed by an appeal.

*Comm. for Educ. Equal.*, 878 S.W.2d at 453.

One factor, however, deserves special attention. As held above, a judgment disposes of a "judicial unit" of claims (and, therefore, is eligible for certification under Rule 74.01(b)) either: (1) because it resolves all claims by or against one or more (but fewer than all) parties, or (2) because it resolves claims that are sufficiently distinct from the claims that remain unresolved. This means it is possible for a judgment to be eligible for certification under the first alternative (i.e., because it resolves all claims by or against at least one party) even though the claims it resolves are not distinct from (and may, in fact, be closely intertwined with) the claims still pending in the circuit court. Of course, such a judgment is eligible for certification under Rule 74.01(b) because it meets the first

13

definition for a "judicial unit," but the circuit court – in its discretion – should not make that certification if resolution of the remaining claims by the circuit court could affect or even moot appellate review of the claims already resolved. *See id*. at 451 (cautioning against interlocutory appeals when "questions are left open which, upon full adjudication of the claim by a trial court, may make the order appealed from moot or which, when fully decided, may even change the identity of aggrieved parties"). By the same token, certification of an otherwise eligible judgment may not meet the "no just reason for delay" test under Rule 74.01(b) if the resolved claims and the unresolved claims are intertwined such that an appellate ruling on the partial judgment could affect the rights of someone who is not party to that judgment (and, therefore, not a party to the appeal) but who remains a party to the unresolved claims still pending in the circuit court. *Comm. for Educ. Equal.*, 878 S.W.2d at 453 ("[W]here the circumstances of the case and the judgment entered are wholly inconsistent with a finding of 'no just cause for delay,' a finding to that effect by a trial court is an abuse of discretion."). Certification not only risks substantial unfairness to such a party, but it also risks turning the appellate decision into an improper advisory opinion with respect to the claims pending in the circuit court. *Cf. Cope v. Parson*, 570 S.W.3d 579, 586 (Mo. banc 2019) ("An opinion is advisory if there is no justiciable controversy, such as if the question affects the rights of persons who are not parties in the case.") (quotation marks omitted).

**B. The orders in this case were not eligible for certification under Rule 74.01(b)**

Treasurer Jones appeals only from the October 25 Declaratory Order. The first criteria for a judgment to be appealable under section 512.020(5) is that it must – in fact – be a judgment. Count I in Plaintiffs' and Intervenor's respective petitions sought declaratory and injunctive relief, but the October 25 Declaratory Order does not address the latter. Therefore, the October 25 Declaratory Order fails this first criteria because it does not fully resolve any claim. In other words, because the October 25 Declaratory Order is not a judgment, it cannot be a "final judgment" as that phrase is used in section 512.020(5).[10] As a result, there is no need to consider whether it is eligible for certification under Rule 74.01(b) on the ground that it resolves a "judicial unit" of claims.

The state appeals from the April 5 Order and the October 25 Injunctive Order. Because the April 5 Order fully resolves the City's cross-claim, it is a judgment. By the same token, because the October 25 Injunctive Order incorporates the October 25 Declaratory Order by express reference and the two orders – taken together – fully dispose of the claim in Count I of Plaintiffs' and Intervenor's respective petitions, the October 25 Injunctive Order is a judgment. As a result, the April 5 Order and the October 25 Injunctive Order both satisfy the first criteria to be appealable under section

---

[10] As shown below, even if Treasurer Jones had appealed from the October 25 Injunctive Order, her appeal would be dismissed for the same reasons the state's appeal of the October 25 Injunctive Order is dismissed.

15

512.020(5). Neither order, however, satisfies the second criteria to be appealable as a "final judgment" under that statute.

First, the April 5 Order and the October 25 Injunctive Order are not "final judgments" in the traditional sense because many claims remain pending in the circuit court. Second, neither the April 5 Order nor the October 25 Injunctive Order was eligible for certification under Rule 74.01(b) because neither disposes of a "judicial unit" of claims, i.e., neither resolves (1) all claims by or against at least one party, or (2) one or more claims that are sufficiently distinct from those claims that remain pending in the circuit court.

The October 25 Injunctive Order does not resolve all claims by or against at least one party – even though it resolves at least one claim brought by Plaintiffs and Intervenor – because Plaintiffs and Intervenor (as well as the defendants to the resolved claims) remain parties to claims still pending in the circuit court. Similarly, the April 5 Order does not dispose of all claims by or against at least one party – even though it resolves the only claim brought by the City – because the City remains a defendant to claims that remain pending in the circuit court. As a result, neither the April 5 Order nor the October 25 Injunctive Order (nor the two of them combined) resolves a "judicial unit" of claims under the first definition of that phrase because they do not resolve all claims by or against one or more parties.

The second definition of "judicial unit" also is not met. Neither the April 5 Order nor the October 25 Injunctive Order (nor the two of them combined) resolves a "judicial

16

unit" of claims in the sense that the claims resolved are sufficiently distinct from the claims still pending in the circuit court. To be eligible for certification under Rule 74.01(b) by resolving a judicial unit of claims under this second definition, the claims resolved must not be based upon the same operative facts and legal theories as the unresolved claims. *First Nat'l Bank of Dieterich*, 515 S.W.3d at 222 ; *Ndegwa*, 371 S.W.3d at 802; *Comm. for Educ. Equal.*, 878 S.W.2d at 452. Here, the validity of the parking statutes, the interplay between those statutes and the parking ordinances, and the various duties those statutes and ordinances impose on various city and county officials are the threads that run throughout both the claims resolved in the April 5 Order and the October 25 Injunctive Order and many (if not all) of the claims that remain pending in the circuit court. In other words, the claims resolved in the April 5 Order and the October 25 Injunctive Order are in no sense the sort of "unrelated substantive claim[s] for relief" that this Court held were eligible for certification under Rule 74.01(b) in *First Nat'l Bank of Dieterich*, 515 S.W.3d at 222.

## Conclusion

For the reasons set forth above, these appeals must be dismissed for lack of jurisdiction because neither challenges a "final judgment" as that phrase is used in section 512.020(5). Treasurer Jones appeals only from the October 25 Declaratory Order, which is not a "judgment" let alone a "final judgment." The state's appeals from the April 5 Order and the October 25 Injunctive Order must be dismissed because – even though both orders are "judgments" – neither is a "final judgment" as that phrase is used in

section 512.020(5) in that neither disposes of a "judicial unit" of claims (i.e., all claims by or against at least one party or a group of claims that is sufficiently "distinct" from the claims still pending in the circuit court).

The appeals are dismissed.

_____
Paul C. Wilson, Judge

All concur.

18