Tyrone WILLIAMS, Respondent–
Appellant,

v.

KANSAS CITY TITLE LOAN CO.,
INC., et al., Respondents,

Walter Grigsby, Respondent,

Westlake Services, Inc., Appellant–
Respondent.

Nos. WD 70941, WD 70969.

Missouri Court of Appeals,
Western District.

July 13, 2010.

Salvatore J. Mirabile, Esq., Kansas City, MO, for appellant.

Stephen Bradley Small, Esq., and Gregory E. Eufinger, Jr., Esq., for Respondent–Appellant.

Mandi R. Hunter, Esq., for Appellant–Respondent.

Before: LISA WHITE HARDWICK, P.J., and JAMES M. SMART, JR. and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Tyrone Williams, the plaintiff below, appeals the trial court's enforcement of a settlement purportedly reached at a court-ordered mediation session, and the conse-

*age v. State,* 229 S.W.3d 99, 102–03 (Mo.App.  2007).

quent dismissal of his claims with prejudice. Westlake Services, one of the defendants below, appeals the trial court's denial of its request for attorneys fees. Because the settlement Westlake and the other defendants sought to enforce was not memorialized in a written agreement executed by all parties, as required by Supreme Court Rules 17.01(d) and 17.06(c), we reverse the trial court's enforcement of the settlement. Westlake's request for attorneys fees depended on its claim that Williams had unreasonably refused to acknowledge the existence of a binding settlement agreement. Because Williams was correct that no binding settlement had been reached, Westlake's attorneys fee motion was properly denied.

## Factual Background

Tyrone Williams brought an action for damages against Westlake, TMJJ Inc. d/b/a Kansas City Credit Motors, KC Title Loan Co., Inc., and Walter Grigsby (collectively "KCCM") in connection with his purchase of a car from KCCM. Williams asserted a variety of substantive claims, including claims under the Merchandising Practices Act, §§ 407.010–407.309, RSMo, for fraud, and for breach of contract.

Westlake alleges that the parties reached a settlement of Williams' claims during a court-ordered mediation with mediator F. Coulter deVries. Westlake contends that Williams and his attorney, Stephen B. Small, left the mediation prior to signing the final written settlement agreement, after advising deVries that they would return shortly to sign the final agreement. Westlake states that the remaining parties, their attorneys, and the mediator waited almost an hour for Williams and Small to return. When Williams and Small did not reappear, the mediator, the defendants, and their counsel signed the agreement. The defendants

and counsel then left. No written settlement agreement signed by all parties exists.

According to Westlake, discussions continued in the week following the mediation, but Small repeatedly quibbled with the various drafts of the proposed settlement agreement. Westlake then filed a motion to enforce the settlement, and sought its attorneys fees. The trial court granted Westlake's motion to enforce, declaring "that all parties of the above-captioned suit are hereby bound by the terms contained in" the settlement agreement which the defendants and the mediator—but not Williams—had signed at the mediation's conclusion. The trial court denied Westlake's motion for attorneys fees.

Both Williams and Westlake now appeal.

## Standard of Review

■ "When reviewing a trial court's judgment enforcing a settlement, we will affirm unless the judgment is against the weight of the evidence, there is no substantial evidence to support it, or the court erroneously applied or declared the law." *Ste. Genevieve Cnty. Levee Dist. # 2 v. Luhr Bros.*, 288 S.W.3d 779, 782 (Mo.App. E.D.2009).

## Analysis

On appeal, Williams argues on four separate grounds that the trial court erred in enforcing the settlement agreement; for its part, Westlake seeks reversal of the trial court's refusal to award it its attorneys fees. On the view we take of this case, we need only address Williams' first Point: that the court's enforcement of the settlement violated Supreme Court Rule 17.06(c), because there was no written settlement agreement signed by the parties or their counsel. Because Westlake's attorneys fee motion depended on its position that a binding settlement existed, the

trial court did not err in denying that motion.

## I.

■ The trial court order which triggered the mediation specifically directed the parties to "participate in mediation pursuant to Supreme Court Rule 17."[1] Rule 17 provides in relevant part:

**17.01. Alternative Dispute Resolution Program—Establishment—Purpose—Definition**

. . . .

(d) All alternative dispute resolution processes shall be non-binding unless the parties enter into a written agreement as provided in Rule 17.06(c). A written agreement shall be binding to the extent not prohibited by law.

**17.06. Confidentiality and Settlement**

. . . .

(c) Settlement shall be by a written document setting out the essential terms of the agreement executed after the termination of the alternative dispute resolution process.

Consistent with Rules 17.01(d) and 17.06(c), the mediation contract executed by the parties specifies:

2. **Mediation Service** . . . . Any settlement reached between the Parties over the matters at issue shall, in order to be binding, be in the form of a written agreement, approved in writing by the attorneys for the Parties, signed by the Parties and witnessed by the Mediator. If Mediator prepares the written settlement agreement, the parties agree to rely on their own individual judgment and/or that of their respective attorneys in making their decision to enter into any binding settlement agreement. . . . Mediation negotiations, statements and opinions of parties and/or the Mediator are confidential and may not be used in any litigation, civil or criminal proceeding.

. . . .

4. **Controlling Law.** This contract is intended to be subject to Missouri law including the Missouri Supreme Court Rules, including but not limited to Rule 17, regarding Mediation. . . .

Westlake acknowledges that the terms of the settlement which the circuit court enforced were agreed to, if at all, during a court-ordered mediation conducted pursuant to Rule 17.[2] It is undisputed that the parties did not, at any time, "enter into a written agreement" "setting out the essential terms of the agreement." Given the absence of a written settlement agreement executed by Williams, the mediation process in which the parties engaged was "non-binding" under the express direction of Rule 17.01(d).[3]

Other provisions of Rule 17 support our reading of the plain language of Rules 17.01(d) and 17.06(c). Supreme Court

---

**1.** This order was consistent with Jackson County Circuit Court Administrative Order 2008–121, which mandates mediation in all civil cases.

**2.** We recognize that questions concerning the applicability of Rule 17 may arise when negotiations continue, either with or without the mediator's involvement, beyond the termination of the court-ordered mediation itself. Such issues are not presented here.

**3.** We reject Westlake's argument that Rule 17 does not require that all parties actually exe-

cute the written agreement memorializing "the essential terms of the agreement." Although it may not be stated in so many words, Rule 17.01(d)'s reference to "the parties enter[ing] into a written agreement," and Rule 17.06(c)'s reference to "execut[ion]" of the "written agreement setting out the essential terms of the agreement," plainly contemplate a writing executed by all parties. This conclusion is buttressed here by § 2 of the mediation contract the parties executed.

Rule 17.06(a) specifies that communications during a court-ordered alternative-dispute resolution process, including a mediation, are confidential:

> An alternative dispute resolution process undertaken pursuant to this Rule 17 shall be regarded as settlement negotiations. Any communication relating to the subject matter of such dispute made during the alternative dispute resolution process by a participant or any other person present at the process shall be a confidential communication. No admission, representation, statement or other confidential communication made in setting up or conducting such process shall be admissible as evidence or subject to discovery, except that, no fact independently discoverable shall be immune from discovery by virtue of having been disclosed in such confidential communication.[4]

Thus, by rule, the back-and-forth of the parties' settlement discussions during a court-ordered mediation session are inadmissible as evidence. A motion to enforce an oral agreement purportedly reached during a mediation session will virtually always require, however, that the parties disclose the content of such discussions, and argue as to whether those discussions resulted in a binding agreement. That is exactly what occurred here: both Westlake and Williams attached affidavits and other documents to their motion papers to substantiate their version of the events that transpired during the mediation, including the statements made by various parties, their counsel, and the mediator. Those disclosures would appear to be in violation of the clear directive of Rule 17.06(a).[5]

During proceedings on its motion to enforce settlement, Westlake also moved (unsuccessfully) for leave to solicit an affidavit or testimony from the mediator concerning events during the mediation. If oral settlements reached during a mediation session were enforceable, hearing from the mediator would seem to be a natural way of determining whether a final and binding agreement was in fact reached. But such testimony is expressly prohibited by Rule 17.06(b):

> No individual or organization providing alternative dispute resolution services pursuant to this Rule 17 or any agent or employee of the individual or organization shall be subpoenaed or otherwise compelled to disclose any matter disclosed in the process of setting up or conducting the alternative dispute resolution process.[6]

It could be argued that a written settlement agreement concluding a court-ordered mediation is itself subject to Rule 17.06(a)'s confidentiality protection. Rule 17.06(c) specifically forecloses that argu-

---

4. Section 435.014.2, RSMo, which is applicable to "[a]rbitration, conciliation and mediation proceedings" generally, contains language similar to Rule 17.06(a).

5. In opposing the defendants' motion to enforce the settlement, Williams argued that the documents attached to the motion were inadmissible hearsay and were confidential under Rule 17.06(a), and moved to strike the documents. Williams' motion to strike was never ruled, and he does not challenge on appeal the trial court's failure to rule on the motion.

   We also note that Williams does not contend as a separate basis for reversal that the trial court inappropriately resolved disputed factual issues concerning the existence and terms of a purported oral settlement agreement without conducting an evidentiary hearing. We express no opinion concerning the procedures the trial court employed to resolve the defendants' motion to enforce. *See generally, Eaton v. Mallinckrodt, Inc.,* 224 S.W.3d 596, 599–602 (Mo. banc 2007).

6. Section 435.014.1, RSMo includes a similar stricture where "all the parties to a dispute agree in writing to submit their dispute to any forum for arbitration, conciliation or mediation."

ment, however. It provides that the written agreement memorializing the settlement's terms shall be "executed *after the termination of the alternative dispute resolution process.*" (Emphasis added.) Thus, by rule, the written agreement itself is not considered to have occurred "during the alternative dispute resolution process," and the agreement is therefore not subject to Rule 17.06(a). Moreover, Rule 17.06(d) provides that the mediator's confidentiality obligations do not apply to testimony concerning the circumstances surrounding the execution of the written settlement agreement itself (or subsequent events), in a proceeding to enforce that written agreement:

> An individual or organization providing alternative dispute resolution services pursuant to this Rule 17 or any agent or employee of the individual or organization may be called in an action to enforce the written settlement agreement reached following the conclusion of the alternative dispute resolution process for the limited purpose of describing events following the conclusion of the alternative dispute resolution process.

The various provisions of Rule 17 we have described above are of a piece. They contemplate that discussions during a court-ordered mediation process, which culminate in the parties' agreement to the essential terms of a settlement, are confidential and non-binding. Neither the parties nor the mediator may disclose the substance of those discussions. Once the parties have reached an agreement on the settlement's essential terms (and on the wording of a writing memorializing those terms), the mediation process concludes, and a written agreement is executed by the parties. That agreement is admissible as evidence and enforceable, and the parties may present testimony and evidence— including testimony from the mediator— concerning the execution of the agreement, the parties' performance thereunder, and other subsequent events.

Westlake correctly notes that oral settlement agreements have long been enforced under the common law in Missouri.[7] We have not been directed, however, to a case enforcing an oral settlement agreement that was allegedly reached during the course of a mediation conducted pursuant to Rule 17. Such court-ordered mediation proceedings are importantly different from settlement discussions or alternative dispute resolution proceedings in which the parties voluntarily engage. While the parties have some right to "opt out" of court-ordered mediation where they represent that "referral to alternative dispute resolution has no reasonable chance of being productive," Rule 17.03(b), the fact is that their participation in such a mediation is compelled by court order, and subject to judicial oversight under Rule 17. In addition, the participants in a court-ordered alternative dispute resolution proceeding may justifiably rely on the unambiguous writing requirement contained in Rules 17.01(d) and 17.06(c) (a requirement which the parties in this case repeated in the mediation agreement they executed). In this context, therefore, common-law principles which may apply to purely voluntary settlement discussions cannot displace the plain language of Rule 17's provisions, which were specifically promulgated to govern proceedings which are a creature of court order and Rule 17 itself.

---

7. *See B–Mall Co. v. Williamson,* 977 S.W.2d 74, 77 (Mo.App. W.D.1998)("The agreement [to settle a pending lawsuit] does not have to be in writing (unless the subject matter is within the Statute of Frauds) and it may be considered valid and enforceable even if it contemplates that a release will be signed at a later time"); *see also, e.g., Owen v. Hankins,* 289 S.W.3d 299 (Mo.App. S.D.2009); *Kenney v. Vansittert,* 277 S.W.3d 713 (Mo.App. W.D. 2008).

We note that, while there may be strong arguments (in addition to common-law tradition) in favor of allowing the enforcement of oral settlement agreements in this context, there are also rational policies furthered by adopting the approach embodied in Rule 17. Insisting that the parties reduce the essential terms of their agreement to an executed writing: prevents the sort of "he said, she said" disputes that have occurred in this case, costing the parties and the courts both time and money; protects the confidentiality of mediation proceedings from inevitable erosion if parties are permitted to attempt to prove up oral agreements reached during mediation; and ensures that the litigants have in fact agreed to particular settlement terms, and that the litigants, including represented and unrepresented individuals, fully understand and accept the consequences of those terms.[8]

We hold that Rule 17 means what it says: the essential terms of settlements reached during court-ordered mediation sessions must be reduced to a writing signed by the parties in order for such settlements to be enforced. Given that no such writing exists here, the trial court's enforcement of the purported settlement of Williams' claims must be reversed.

## II.

 In its appeal, Westlake argues that the trial court abused its discretion in denying its motion for attorneys fees. No statutory or contractual basis exists for a fee award. Westlake nevertheless argues that special circumstances justifying a fee award exist "because a settlement was reached by Williams and Westlake at the mediation but due to the departure of Williams and Williams' attorney from the mediation, Westlake was forced to incur additional attorneys fees in its filing of a motion to enforce the settlement to attain closure to the case."

As we have detailed above, Williams correctly took the position that no binding settlement had been reached at the mediation. Without an enforceable settlement, Williams was under no legal obligation to execute a written settlement agreement with which he did not agree. Because we have rejected the premise underlying Westlake's request for attorneys fees, the circuit court could not have abused its discretion in denying that request. Westlake's Point is denied.[9]

### Conclusion

The circuit court's judgment is reversed, and the case remanded for further proceedings on the merits of Williams' claims.

All concur.

---

**8.** Other states have mediation-confidentiality rules and statutes, and rules or statutes requiring or authorizing writings to document settlements reached in mediation. While such rules and statutes inevitably vary from state to state, we note that courts in other states have reached differing conclusions as to whether oral settlement agreements purportedly reached during mediations, but not evidenced by an executed writing, are enforceable. *See, e.g., Yaekle v. Andrews,* 195 P.3d 1101 (Colo.2008); *Reese v. Tingey Constr.,* 177 P.3d 605 (Utah 2008); *Ledbetter v. Ledbetter,* 163 S.W.3d 681, 685–86 (Tenn. 2005); *Riner v. Newbraugh,* 211 W.Va. 137, 563 S.E.2d 802 (2002); *Vernon v. Acton,* 732 N.E.2d 805 (Ind.2000); *Few v. Hammack Enters., Inc.,* 132 N.C.App. 291, 511 S.E.2d 665 (1999).

**9.** Our disposition of Westlake's appeal should not be read to condone any behavior in which Williams or his attorney may have engaged.