

# Missouri Court of Appeals

## Southern District

### In Division

ANTHONY LECIEJEWSKI and SUSAN LECIEJEWSKI, )
Trustees UTA of ANTHONY LECIEJEWSKI and )
SUSAN LECIEJEWSKI REVOKEABLE LIVING TRUST )
dated January 6, 2016, )
        )
        Appellants, )  No.  SD38271
        )
   vs. )  FILED: December 20, 2024
        )
T & C CUSTOM HOMES, INC., and B & G DRAFTING, INC., )
        )
        Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Jessica Lynn Kruse, Judge

**<u>AFFIRMED</u>**

Anthony and Susan Leciejewski (collectively, the "Leciejewskis"), in their capacity as trustees, brought an action in the Christian County Circuit Court against T & C Custom Homes, Inc., B & G Drafting, Inc., and Mike and Karen Coffer (collectively, "Defendants")[1] for damages allegedly incurred in connection with a custom home construction project. During the ensuing litigation, and over the Leciejewskis' objection, Defendants successfully sought enforcement of a purported agreement to settle the underlying dispute. On appeal, the Leciejewskis contend in

---

[1] Although Mike and Karen Coffer were not listed as parties on the notice of appeal filed in this Court, they are the owners of T & C Custom Homes, Inc., and are indicated as Respondents in the Respondents' brief filed herein.

two points that the circuit court erred because (1) it misapplied the law, in that the settlement agreement arose out of court-ordered mediation but was not memorialized in writing as required by Rules 17.01(d) and 17.06(c)[2]; and (2) there was no substantial evidence to support the conclusion that the parties had a meeting of the minds necessary to form a binding agreement. Finding no merit in either point, we affirm.

## Factual and Procedural Background

On August 19, 2022, over four years into the underlying litigation, the circuit court ordered the parties "to conduct mediation within 30 days with a mutually agreed upon mediator." The parties participated in mediation and in November of 2022, Defendants filed motions to enforce settlement claiming that a settlement agreement with the Leciejewskis had been reached. Shortly thereafter, counsel for the Leciejewskis moved to withdraw.

In their motions, Defendants asserted that the circuit court ordered the parties to mediation at the Leciejewskis' request and, on September 6, 2022, the parties participated in mediation with Rod Loomer serving as mediator. At that mediation, Defendants announced their final settlement offer and allowed the Leciejewskis to consider that offer for several additional days. Defendants claimed that on September 12, 2022, prior to the settlement offer expiring, the Leciejewkis, by way of their former counsel, informed Mr. Loomer that they were accepting Defendants' final settlement offer.

The settlement was not memorialized by a writing signed by all the parties. The Leciejewskis obtained new counsel, and responded to Defendants' motions in June of 2023. In their responses, the Leciejewskis affirmatively admitted to Defendants' allegations regarding the details of mediation occurring on September 6, 2022. Additionally, the Leciejewskis admitted

---

[2] All rule references are to Missouri Court Rules (2022).

that, on September 12, 2022, Anthony Leciejewski communicated with their former counsel that the Leciejewskis would accept Defendants' final settlement offer. Susan Leciejewski, however, claimed that any communication with their former counsel regarding Defendants' final settlement offer was initiated by Anthony Leciejewski alone, without her authority, involvement, or knowledge. The Leciejewskis claimed that after they communicated with one another, they determined that they were not comfortable with Defendants' final settlement offer and decided not to join Defendants in executing a written settlement agreement. Because they did not sign a document memorializing the mediation agreement, the Leciejewskis argued that the enforcement of any purported settlement agreement would violate Rules 17.01(d) and 17.06(c).

The circuit court held an evidentiary hearing on Defendants' motions. Susan Leciejewski was the only witness to testify and her testimony was in accord with the allegations set forth in the Leciejewskis' response to Defendants' motions. In addition, the Leciejewskis offered into evidence a letter that they sent to the circuit court on November 4, 2022, which included a letter from their former attorney, dated November 2, 2022, addressed to both of the Leciejewskis, informing them that "[i]f you would like to proceed with the settlement you previously agreed to, please contact me immediately"; otherwise, he intended to withdraw.

Ultimately, the circuit court entered a judgment enforcing the oral settlement agreement and dismissing the claims in the Leciejewskis' petition with prejudice. The Leciejewskis timely appeal.

### Standard of Review

In reviewing a circuit court's judgment enforcing a settlement, this Court will affirm the judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law." ***Indep. Taxi Drivers Ass'n v. Metro.***

3

*Taxicab Comm'n*, 524 S.W.3d 157, 160 (Mo.App. 2017); *see also **Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976).

### Discussion

### *Point 1*

The Leciejewskis' first point is premised on Rule 17, entitled "ALTERNATIVE DISPUTE RESOLUTION" ("ADR"). The Leciejewskis contend that the parties' mediation was governed by this Rule 17 and, as provided for by that rule, the resulting settlement agreement was required to be executed in writing. *See* Rules 17.01(d) and 17.06(c). Defendants correctly observe, however, that the Christian County Circuit Court has not formally adopted Rule 17. The parties' dispute, therefore, centers upon whether formal adoption of Rule 17 is required for it to apply. We agree with Defendants that such formal adoption is required.

"[T]he rules of the Supreme Court of Missouri are reviewed *de novo*" because we review such rules "by applying the same principles used for interpreting statutes." ***McGuire v. Kenoma, LLC***, 447 S.W.3d 659, 662 (Mo. banc 2014) (internal quotation marks omitted). The "primary rule of interpretation is to apply the plain language of the rule at issue." ***In re Hess***, 406 S.W.3d 37, 43 (Mo. banc 2013). "Provisions involving the same subject matter are to be construed together." ***Clark v. Kinsey***, 488 S.W.3d 750, 757 (Mo.App. 2016) (internal quotation marks omitted). As with a statute, we do not look at any one portion of a rule in isolation when interpreting the meaning of the rule. *See **Union Elec. Co. v. Dir. of Revenu**e*, 425 S.W.3d 118, 122 (Mo. banc 2014). Rather, this Court considers the context of the entire rule to determine its plain meaning. *See **id.***

Rule 17 is subdivided into Rules 17.01 through 17.07. The first of these rules, entitled "Alternative Dispute Resolution Program—Establishment—Purpose—Definition[,]" begins with

4

the provision that "[a]ny judge by order or any judicial circuit by local court rule may establish an [ADR] *program* as provided in this Rule 17." Rule 17.01(a) (emphasis added). "As used in this rule 17, [ADR] *programs* include but are not limited to" arbitration, early neutral evaluation, mediation, mini-trial, and summary jury trial. Rule 17.01(b)(1)-(5) (emphasis added); *see, e.g.*, ***Williams v. Kansas City Title Loan Co.***, 314 S.W.3d 868, 870 and n.1 (Mo.App. 2010) (noting that a circuit court order "direct[ing] the parties to 'participate in mediation pursuant to Supreme Court Rule 17'" was "consistent with Jackson County Circuit Court Administrative Order 2008-121, which mandates mediation in all civil cases"). Additionally, "[e]ach circuit is encouraged to develop other [ADR] *programs* that will meet the needs of the parties, the circuit and the community." Rule 17.01(c) (emphasis added).

The remaining rules contain various provisions regarding the administration of Rule 17 ADR. As relevant for purposes of this analysis, several of these provisions further elaborate on the "program" concept first introduced prominently in Rule 17.01. For example, Rule 17.02, entitled, "Notice of [ADR] Services[,]" requires that "[i]n each civil action to which the [ADR] *program* applies, a notice of [ADR] resolution services shall be furnished to all parties to the action." Rule 17.02(a) (emphasis added). This notice requirement, which presumes a previously-established program, "shall be provided to the party initiating the action at the time the action is filed," and all "responding parties shall receive the notice with the summons and petition." *Id.* And "[i]n addition to the provisions of Rule 17.02(a), counsel shall advise their clients of the availability of [ADR] *programs*." Rule 17.02(b) (emphasis added).

Here, four years after the Leciejewskis sued Defendants, the circuit court issued an order "to conduct mediation within 30 days with a mutually agreed upon mediator." But, as all parties acknowledge, the Christian County Circuit Court has no administrative orders or local rules

5

establishing an ADR "program" with all of the attendant safeguards provided for under Rule 17, nor did the judge specify in the docket sheet entry that the mediation was to be conducted pursuant to Rule 17, as in **Williams**, 314 S.W.3d at 870.[3] The Leciejewskis argue, however, that no such program needs to be in place for Rule 17 to apply to a court-ordered mediation. In support of this argument, the Leciejewskis seize upon select provisions in Rule 17.03, entitled "Referral, Notification and Appointment[.]" Those provisions state:

> A civil action shall be ordered to [ADR] upon stipulation of the parties except in cases governed by Rule 88. A civil action may be ordered to [ADR] upon the motion of any party or by the court. Absent the parties agreeing to an [ADR] process, the court shall determine the most appropriate process.

Rule 17.03(a). The Leciejewskis also argue that "there is nothing in Rule 17.03(a) to suggest that a circuit court must have a formal [ADR] 'program' in place in order for the court to be allowed to order parties to the mediation 'process.'"

The Leciejewskis are correct that mediation is defined as a "process" in Rule 17. As already noted, however, this and other definitions are found in Rule 17.01(b)(1)-(5), which lists "programs" "[a]s used in this Rule 17[.]" One such *program*, "[m]ediation," is defined in pertinent part as "a *process* in which a neutral third party facilitates communication between the parties to promote settlement." Rule 17.01(b)(3) (emphasis added). Rule 17.01(b), therefore, illustrates that the use of the words "process" and "program" are interrelated for the purposes of Rule 17 and not meant to be construed in isolation from one another. Even the Rule 17.03(a) provisions cited and relied upon by the Leciejewskis are followed by other provisions in Rule 17.03 stating, "[i]f the parties agree to participate in the [ADR] *program* but cannot agree upon

---

[3] We note that Christian County Circuit Court local Rule 68.11 pertains to ADR but only in the context of domestic relations cases. Rule 17, however, does not apply in the domestic relations context because, as expressly stated in the rule, it exists "to provide an alternative mechanism for the resolution of civil disputes, except those subject to Supreme Court Rules 88.02 to 88.08 . . . ." Rule 17.01(a). Rules 88.02 to 88.08 specifically govern mediation in domestic relations cases.

the neutral, then the court shall select a neutral from individuals or organizations qualified under Rule 17.04," Rule 17.03(c) (emphasis added), and "[e]ach circuit shall adopt such local court rules as shall be appropriate for the scheduling of disputes referred to the *program*[,]" Rule 17.03(f) (emphasis added). In short, we reject the Leciejewskis' attempt to rely on a single word, limited to the narrow context of a few rule provisions, while ignoring the larger context of Rule 17, the entirety of which plainly pertains to procedures for the establishment and administration of ADR programs.

As an additional matter, we note that the Leciejewskis further assert that "[i]f the argument of [Defendants] were to be adopted by this Court, then the [circuit] court would not have had the authority and jurisdiction to order the parties to mediation to begin with, and the mediation should never have taken place." This argument, however, is outside the scope of the Leciejewskis' point relied on, which pertains solely to whether Rule 17 applies to the facts of this case. We conclude that it does not. In resolving this point, we do not address or express any opinion as to whether the circuit court had authority to order the parties to mediation.

"Agreements to settle pending lawsuits are enforceable by motion." ***B-Mall Co. v. Williamson***, 977 S.W.2d 74, 77 (Mo.App. 1998). Under common law, "[t]he agreement does not have to be in writing (unless the subject matter is within the Statute of Frauds) and it may be considered valid and enforceable even if it contemplates that a release will be signed at a later time." ***Id.*** Because Rule 17 does not apply here, and in light of the common law, the Leciejewskis have failed to demonstrate any circuit court error in the granting of motions to enforce an oral settlement agreement. Accordingly, point 1 is denied.

*Point 2*

In their second point, the Leciejewskis contend that the circuit court erred in enforcing the settlement agreement because there was "no substantial evidence" to support a finding that the parties had a meeting of the minds in that Susan Leciejewski did not accept the final settlement offer. We disagree.

"Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact[] can reasonably decide the case." *Williams v. Daus*, 114 S.W.3d 351, 359 (Mo.App. 2003) (internal quotation marks omitted). Below, we quote from the Leciejewskis' argument in which they identify the following "favorable evidence in the record of this case supporting the [circuit] court's determination that the [Leciejewskis] and [Defendants] had a meeting of the minds sufficient to form a binding settlement agreement":

- All parties were clear as to the terms of [Defendants]' final mediated offer from September 6, 2022, as testified by Mrs. Leciejewski.

- Mr. Leciejewski did accept the [Defendants]' final mediated offer by text on or about September 12, 2022.

- Mrs. Leciejewski admitted during cross-examination that neither her nor Mr. Leciejewski contacted [Defendants]' counsel during the time period between prior counsel's withdrawal and June of 2023 to provide any reasons as to why the settlement was not signed.

- Mrs. Leciejewski further agreed that the [Leciejewskis]' prior counsel had sent the [Leciejewskis] a letter on or about November 2, 2022 addressed to both [Leciejewskis], and that the letter stated in relevant part: "If you would like to proceed with the settlement you previously agreed to, please contact me immediately."

- Mrs. Leciejewski additionally acknowledged that she and her husband submitted a letter to the [circuit] court dated November 4, 2022. In the letter addressed to the [circuit] court on November 4, 2022, the [Leciejewskis] did not mention the fact that Mr. Leciejewski agreed to something that Mrs. Leciejewski did not agree to.

(Record citations omitted.)

8

The Leciejewskis then list more evidence, essentially consisting of Susan Leciejewski's testimony that she did not agree to Defendants' final settlement offer and did not delegate her decision making. The Leciejewskis acknowledge that this second batch of evidence is "unfavorable" to the circuit court's determination, yet nevertheless rely on it in attempting to show that the circuit court's judgment was not supported by substantial evidence. The Leciejewskis' reliance on such evidence, however, is contrary to the following framework by which we review a not-supported-by-substantial-evidence challenge:

> We view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the [circuit] court's superior position to make credibility determinations. Due to that superior position, a [circuit] court is free to believe or disbelieve all, part, or none of the testimony of any witness. Thus, any citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence. Such contrary facts and inferences provide no assistance to this Court in determining whether the evidence and inferences favorable to the challenged proposition have probative force upon it, and are, therefore, evidence from which the trier of fact can reasonably decide that the proposition is true.

*Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. 2010) (internal quotation marks and citations omitted).

The circuit court was free to and apparently did reject Susan Leciejewski's testimony to the extent such testimony was contrary to the judgment. The evidence that remained showed that: (1) as could be inferred from their former counsel's letter, both the Leciejewskis agreed to Defendants' final settlement offer; and (2) the Leciejewskis' former counsel communicated this acceptance to Defendants on behalf of the Leciejewskis. As is applicable in such a situation:

> While there is no implied authority for attorneys to settle cases on behalf of their clients, in cases where an attorney represents that he or she has authority from the client to accept a settlement offer, and did reach an agreement with the other party's counsel to settle, Missouri courts have placed a substantial burden on the client to disprove [their] attorney's authority if the client wishes to avoid the

9

settlement. In fact, only where the trier of fact has been convinced that authority to settle was truly lacking, or where the evidence has been deemed insufficient to raise the presumption of attorney authority, have our courts allowed clients to avoid or attempt to avoid settlements concluded by their attorneys.

*Bolander v. City of Green City*, 35 S.W.3d 432, 440 (Mo.App. 2000) (internal quotation marks and citations omitted).

The Leciejewskis failed to meet this burden. Accordingly, point 2 is denied.

## **Decision**

The circuit court's judgment is affirmed.

BECKY J. WEST, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS